**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Annabelle Yao, on behalf of herself and all others similarly situated, | No. 18-cv-07865 |
| | Hon. Charles P. Kocoras |
| | Magistrate Judge Young B. Kim |
| Plaintiff, | |
| vs. | |
| Carillon Tower/Chicago LP, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF TD BANK'S
<u>MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>**

Dated: February 8, 2019

Kevin B. Duff
Michael Rachlis
RACHLIS DUFF PEEL & KAPLAN, LLC
524 South Dearborn Street, Suite 900
Chicago, IL 60605
(312) 733-3950

Edward N. Moss
Nathaniel Asher
O'MELVENY & MYERS, LLP
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for Defendant TD Bank, N.A.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

THE COMPLAINT'S ALLEGATIONS .................................................................... 2

      A.    Carillon Tower and the EB-5 Project ....................................................... 2

      B.    The Allegations Against TD Bank ............................................................ 3

ARGUMENT ........................................................................................................... 4

    I.    THE COURT LACKS PERSONAL JURISDICTION OVER TD BANK ........... 4

    II.    NEW YORK IS THE EXCLUSIVE FORUM FOR CLAIMS AGAINST TD BANK ...................................................................................................... 7

    III.    THE COURT SHOULD DISMISS THE BREACH OF CONTRACT CLAIM ....................................................................................................... 8

      A.    The Complaint Fails to Allege the Existence of a Valid and Binding Contract. ................................................................................... 8

      B.    Plaintiffs Lack Standing. ......................................................................... 10

    II.    THE COURT SHOULD DISMISS THE FRAUD CLAIM (COUNT V) ........... 11

      A.    The Complaint Does Not Adequately Allege Fraud Against TD Bank. ..................................................................................................... 11

      B.    The Fraud Claim is Duplicative of the Contract Claim. ........................... 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................ 8, 10

*Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*,
  364 F.3d 884 (7th Cir. 2004) ............................................................................ 8

*Amro Intern., S.A.. v. Sedona Corp.*,
  2010 WL 2813452 (S.D.N.Y. Jul. 6, 2010) ...................................................... 11

*Apperson v. Ampad Corp.*,
  641 F. Supp. 747 (N.D. Ill. 1986) ..................................................................... 9

*Ariel Invs., LLC v. Ariel Cap. Advisors LLC*,
  881 F.3d 520 (7th Cir. 2018) ............................................................................ 6

*Asahi Metal Ind. v. Superior Court of California*,
  480 U.S. 102 (1988) ......................................................................................... 6

*Bell Bros. v. Bank One, Lafayette, N.A.*,
  116 F.3d 1158 (7th Cir. 1997) .......................................................................... 13

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ............................................................... 9

*Bonded Fin. Servs. Inc, v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) ........................................................................... 13

*Bonny v. Soc'y of Lloyd's*,
  3 F.3d 156 (7th Cir. 1993) ................................................................................ 8

*Bristol-Myers Squibb Co. v. Superior Ct.*,
  137 S. Ct. 1773 (2017) ..................................................................................... 6

*Carruthers v. Flaum*,
  450 F. Supp. 2d 288 (S.D.N.Y. 2006) ............................................................... 9

*Childers v. New York Presbyterian Hosp.*,
  36 F. Supp. 3d 292 (S.D.N.Y. 2014) ................................................................ 9

*Coronet Ins. Co. v. Seyfarth*,
  665 F. Supp. 661 (N.D. Ill. 1987) ..................................................................... 12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................ 5

*Desimone v. Quicken Loans, Inc.*,
  2011 WL 900947 (S.D. Ind. Mar. 15, 2011) ......................................................... 12

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ................................................................................. 12

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ............................................................................... 12

*Double Alpha, Inc. v. Mako Partners, L.P.*,
  2000 WL 1036034 (S.D.N.Y. July 27, 2000) ....................................................... 13

*Dunlap v. Switchboard Apparatus, Inc.*,
  2012 WL 1712554 (S.D. Ind. May 15, 2012) ....................................................... 14

*Dunn v. Pace Suburban Bus Serv.*,
  2001 WL 717476 (N.D. Ill. June 22, 2001) ........................................................... 9

*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*,
  2012 WL 2953188 (N.D. Ill. July 19, 2012), *aff'd*, 707 F.3d 869 (7th Cir. 2013) ..................... 3

*Fujisawa Pharm. Co. v. Kapoor*,
  16 F. Supp. 2d 941 (N.D. Ill. 1998) ....................................................................... 4

*Gruca v. Alpha Therapeutic Corp.*,
  19 F. Supp. 2d 862 (N.D. Ill. 1998) ....................................................................... 4

*HSH Nordbank AG v. UBS AG*,
  95 A.D.3d 185 (1st Dep't 2012) ........................................................................... 14

*In re Agape Litig.*,
  681 F. Supp. 2d 352 (E.D.N.Y. 2010) ................................................................... 13

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................................ 6

*Jepson, Inc. v. Makita Corp.*,
  34 F.3d 1321 (7th Cir. 1994) ................................................................................. 13

*Krantz v. Chateau Stores of Canada Ltd.*,
  256 A.D.2d 186 (1st Dep't 1998) ......................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*,
    228 F.3d 784 (7th Cir. 2000) ...................................................................................... 9

*Miner v. Fashion Enters., Inc.*,
    342 Ill. App. 3d 405 (1st Dist. 2003) ....................................................................... 13

*Morse v. Weingarten*,
    777 F. Supp. 312 (S.D.N.Y.1991) ........................................................................... 11

*Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*,
    525 F. Supp. 2d 1039 (N.D. Ill. 2007) ..................................................................... 6

*Native American Arts, Inc. v. Contract Specialties, Inc.*,
    2010 WL 658864 (N.D. Ill. Feb. 18, 2010) ............................................................. 7

*Palm Beach Strategic Income, LP v. Salzman*,
    2011 WL 441778 (E.D.N.Y. Feb. 7, 2011) ............................................................. 10

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) ....................................................................... 6

*RAR v. Turner Diesel, Ltd.*,
    107 F.3d 1272 (7th Cir. 1997) .................................................................................. 4

*Reeve v. Ocean Ships, Inc.*,
    2011 WL 3165765 (N.D. Ill. July 27, 2011)............................................................ 5

*Schwarz v. Sellers Markets, Inc.*,
    812 F. Supp. 2d 932 (N.D. Ill. 2011) .................................................................... 7, 8

*Simon Prop. Grp., L.P. v. Michigan Sporting Goods Distribs., Inc.*,
    837 N.E.2d 1058 (Ind. Ct. App. 2005) .................................................................... 11

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) .................................................................................... 11

*Union Oil Co. of California v. John Brown E&C*,
    1994 WL 535108 (N.D. Ill. Sept. 30, 1994) ........................................................... 11

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ...................................................................................... 13

*Warth v. Seldin*,
    422 U.S. 490 (1975).................................................................................................. 10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Yellen v. U.S. Nat'l Bank, N.A.*,
  301 F. Supp. 3d 43 (D.C. Cir. 2018).............................................................................. 5

**STATUTES**

735 ILCS 5/2-209(a) ................................................................................................................ 5

735 ILCS 5/2-209(a)(1) ........................................................................................................... 5

735 ILCS 5/2-209(a)(11) ......................................................................................................... 5

735 ILCS 5/2-209(a)(2) ........................................................................................................... 5

735 ILCS 5/2-209(a)(7) ........................................................................................................... 5

735 ILCS 5/2-209(b) ................................................................................................................ 4

Defendant TD Bank, N.A. ("TD Bank") respectfully submits this memorandum of law to explain why each of the Complaint's three claims against TD Bank (Count IV for Breach of Contract, Count V for Fraud, and Count VII for Appointment of a Third-Party Administrator), should be dismissed under Federal Rules of Civil Procedure 9(b) and 12(b)(2), (3), and (6).

## PRELIMINARY STATEMENT

Plaintiffs allege that they are the victims of a fraud perpetrated by an investment partnership and its related entities. They claim that they were duped into investing money in a Chicago real estate project that can never be completed, and they have sued TD Bank solely because it held their investment funds in escrow and released them to the partnership when instructed to do so by the partnership. But Plaintiffs effectively concede that TD Bank had nothing to do with the fraud, claiming that TD Bank released their funds to the partnership because the partnership *knowingly and falsely* told TD Bank that the contractual trigger for release had occurred. Thus, Plaintiffs' own allegations show the *antithesis* of fraud by TD Bank. And their claims are legally deficient for several additional reasons.

*First*, this Court lacks personal jurisdiction over TD Bank, because it is neither incorporated nor headquartered in Illinois, does not conduct business in Illinois, and is not alleged to have engaged in any conduct in Illinois relevant to Plaintiffs' claims (or at all). Plaintiffs merely allege that TD Bank entered into an Escrow Agreement with a New York partnership to hold funds from Chinese investors that one day would be used to fund a real estate project in Chicago. Those facts are insufficient to tie TD Bank to Illinois under the long-arm statute, and hauling TD Bank into this Court would be unfair and contrary to fundamental notions of due process—particularly because the Escrow Agreement expressly provides for exclusive jurisdiction in New York courts for all claims arising out of or relating to it.

*Second*, the claims against TD Bank should be dismissed based on that exclusive-forum provision.

*Third*, Plaintiffs' contract claim should be dismissed because (i) the Complaint fails to plead the existence of a valid and binding contract, instead relying on an unsigned and undated "Form" of Escrow Agreement that the project's offering documents expressly disclose is a non-final version subject to TD Bank's approval; and (ii) Plaintiffs in any event lack standing to sue because they are neither parties to nor intended third-party beneficiaries of that agreement.

*Finally*, Plaintiffs' fraud claim should be dismissed because (i) the Complaint does not plead any facts tying TD Bank to the alleged fraud (let alone the required particularized facts) and, as noted above, actually pleads the opposite of fraud as to TD Bank; and (ii) it is entirely duplicative of the contract claim. For these and the other reasons described below, the Court should dismiss the claims against TD Bank with prejudice.

## THE COMPLAINT'S ALLEGATIONS[1]

### A.    Carillon Tower and the EB-5 Project

The named Plaintiff is one of 90 Chinese investors who loaned money to an investment partnership, its principal Jeffrey Laytin, and related entities[2] for the development of the Carillon Tower in Chicago. (Compl. at 1.) According to the Complaint, however, the development project was a fraud. (*Id.* ¶¶ 39, 120.) The Complaint alleges that the project "does not exist and will never exist" (*id.* ¶ 46) because the Partnership Defendants have not submitted their plan to the Chicago City Commissioner (*id.* ¶¶ 40–43), the Plaintiffs' money has not been returned, and "no one will tell them where it is." (*Id.* at 2.) Further, the Partnership Defendants allegedly

---

[1] Unless noted, all emphasis is added and all internal citations and quotations are omitted.
[2] These Defendants are defined here as the "Partnership Defendants" and include all Defendants other than TD Bank—*i.e.,* Carillon Tower/Chicago LP, Forefront EB-5 Fund (ICT) LLC, Tizi LLC, Symmetry Property Development II LLC, Fordham Real Estate LLC, and Jeffrey L. Laytin.

misrepresented the investment opportunity in the offering memorandum (the "PPM") and the marketing website. (*Id.* ¶¶ 73, 111–120.) Plaintiffs allegedly entered into (i) a "Limited Partnership Agreement" (attached to the PPM as Exhibit B) and (ii) a "Subscription Agreement" (attached to the PPM as Exhibit C). (Compl. Ex. 1 at 97–132, 141–159.) [3] Their counter-party for each agreement was Defendant Carillon Tower/Chicago LP (defined as the "LP" (*see* Compl. ¶ 19)) through its General Partner, Forefront EB-5 Fund (ICT) LLC (defined as the "GP" (*see* Compl. ¶ 4)). (*See* Compl. Ex. 1 at 97–132 and 141–159.)

### B. The Allegations Against TD Bank

The Complaint does not allege that TD Bank played any role in conceiving of or developing the Carillon Tower project, nor that TD Bank made any representations to any investors or entered into any contract with them. Rather, the Complaint alleges that TD Bank's sole connection to the project was to serve as the escrow agent. (Compl. ¶ 6.)

The Complaint alleges that TD Bank and the LP entered into an escrow agreement, attached as Exhibit D to the PPM (Compl. Ex. 1 at 164–171) under which TD Bank would hold in escrow funds received from the investors and release them when TD Bank received "written direction of the Limited Partner certifying that the Holdback Trigger has been satisfied." (Compl. ¶ 27.) The Complaint alleges that the Holdback Trigger (*i.e.*, that "the Project plan has been formally submitted to the Chicago Commissioner of Planning and Development") was not satisfied, but because the LP breached the Limited Partnership Agreement "by wrongfully . . .

---

[3] The Court can consider the PPM and its exhibits on this motion because they are attached to, and incorporated by reference into the Complaint. *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 2012 WL 2953188, at *1 (N.D. Ill. July 19, 2012), *aff'd*, 707 F.3d 869 (7th Cir. 2013) (considering on motion to dismiss defendants' movie that was referred to in complaint and central to plaintiffs' claims).

informing TD that the Holdback Trigger had been satisfied," TD Bank released "some and/or all" of the funds prematurely. (*Id.* ¶¶ 25, 27, 30, 37, 91.)

The Complaint asserts two claims against TD Bank[4] arising from its alleged conduct as escrow agent: breach of contract (Count IV) for failing to adhere to the release requirements; and fraud (Count V) based on alleged misstatements on the website operated by defendant Tizi LLC.

## ARGUMENT

## I.     THE COURT LACKS PERSONAL JURISDICTION OVER TD BANK

The Court should dismiss the claims against TD Bank because Plaintiffs have not met their burden to show that the Court can exercise personal jurisdiction over TD Bank. *See Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 865 (N.D. Ill. 1998) (explaining that burden is on plaintiff). There is no sufficient basis to exercise jurisdiction under the Illinois long-arm statute, and exercising jurisdiction over TD Bank would run afoul of the requirements of constitutional due process. *See RAR v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

*First*, there is no basis for general or specific long-arm jurisdiction. The Court lacks general jurisdiction because TD Bank is not organized under the laws of Illinois, but rather is a national bank organized under the laws of the United States. Further, it does not: (i) conduct business in Illinois, (ii) maintain an office in Illinois, (iii) maintain any bank branches in Illinois, or (iv) own real property in Illinois. *See* Affidavit of Arlene Murphy in Support of TD Bank's Motion to Dismiss the Class Action Complaint ("Murphy Aff."), attached as Exhibit 1, ¶¶ 2–5; *see also* 735 ILCS 5/2-209(b) (general jurisdiction established only when corporation is organized under Illinois law or does business in Illinois). Thus, TD Bank's contacts in Illinois

---

[4] The Complaint also includes a cause of action entitled "Appointment of Third-Party Administrator" against all Defendants (Count VII). But this is an equitable remedy, not an actual cause of action. *See, e.g.*, *Fujisawa Pharm. Co. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998) (holding a constructive trust was an equitable remedy, not a separate cause of action).

are not "so constant and pervasive as to render it essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *see also Yellen v. U.S. Nat'l Bank, N.A.*, 301 F. Supp. 3d 43, 47 (D.C. Cir. 2018) (granting national bank defendant's motion to dismiss for lack of personal jurisdiction).

The Court also lacks specific jurisdiction under the Illinois long-arm statute because the Complaint fails to allege that TD Bank participated in any of the statute's enumerated acts such as transacting business, committing a tortious act, or breaching any duty in Illinois. *See* 735 ILCS 5/2-209(a)(1), (2), (11). Nor could the Complaint adequately allege that TD Bank "ma[de] or perform[ed] . . . any contract or promise substantially connected with [Illinois]" or that their claims against TD "arise" from such acts. *Id.* §§ 2-209(a), (a)(7). Courts considering whether a contract is "substantially connected" with Illinois focus on (i) the contract's prior negotiations, future consequences, and terms, and (ii) the parties' course of dealing. *See Reeve v. Ocean Ships, Inc.*, 2011 WL 3165765, at *2 (N.D. Ill. July 27, 2011).

Here, (i) the Complaint does not allege that TD Bank and the LP (a New York entity) negotiated the Escrow Agreement—or had any course of dealing—in Illinois, (ii) there are no alleged future consequences in Illinois (*i.e.*, because TD Bank is not required to release the money into Illinois but simply to the LP), and (iii) the Escrow Agreement's terms (which required TD Bank to hold money sent from China) do not provide for any performance in Illinois. The mere fact that the funds—once released to the LP by TD Bank—were ultimately supposed to fund a development in Chicago is insufficient to establish a "substantial connection" with Illinois. *See Reeve*, 2011 WL 3165765, at *3 (dismissing complaint for lack of personal jurisdiction where defendant's only connection to Illinois was agreeing to a contract with an Illinois resident); *see also Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th

Cir. 2018) (explaining that "[k]nowing about a potential for harm in a particular state is not the same as acting *in* that state – and it takes the latter to permit personal jurisdiction under state law") (emphasis in original). Moreover, Plaintiffs (in China) did not suffer any injury in Illinois, and their claims do not "arise" from any connection with Illinois. Rather, Plaintiffs complain only that TD Bank (which conducts no business in Illinois) wrongfully released funds to the LP (a New York entity).

*Second*, exercising jurisdiction over TD Bank would not comport with due process. TD Bank did not have sufficient contacts to establish a connection to Illinois, and did not purposefully direct actions in Illinois, and therefore the claims could not arise from those contacts or actions. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Thus, Plaintiffs cannot establish the "constitutional touchstone" that TD Bank "purposefully established minimum contacts in the forum State" or that it has "availed [itself] of the privilege of conducting business" in Illinois by obtaining "the benefits and protections" of Illinois laws. *Asahi Metal Ind. v. Superior Court of California*, 480 U.S. 102, 108–09 (1988). Hauling TD Bank into court in Illinois merely because the funds it held in escrow—outside of Illinois pursuant to a contract with a New York counter-party—were ultimately to be used in Illinois is inconsistent with fundamental notions of due process. *See, e.g.*, *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1042 (N.D. Ill. 2007) (no "purposeful availment" when defendant's contacts with a forum are "attenuated"). As the Supreme Court recently emphasized, the connection to a forum is "even weaker" where, as here, "all the conduct giving rise to the nonresident['s] claim occurred elsewhere." *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1782 (2017); *see also Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 860–66 (N.D. Ill. 2018) (applying *Bristol-Myers* in

context of putative class action).  Here, the disconnect is magnified because the unsigned Escrow Agreement that is the basis of the claims against TD Bank explicitly provides for exclusive jurisdiction in New York (*i.e.*, where the LP was organized and had its offices).  Thus, TD Bank could not have had *any* expectation of being sued in Illinois.

Plaintiffs attempt to overcome these fatal jurisdictional flaws with the generalized and conclusory allegation that "Defendants have all purposely availed themselves of this district by setting up a development Project in this district."  (Compl. ¶ 13.)  But their own words fail them.  The Complaint expressly concedes that TD Bank did not set up the project:  "This project is another EB-5 project, set up this time by a firm called Tizi LLC."  (*Id.* at 2.)  Thus, this Court cannot excise jurisidiction over TD Bank, and the claims against it must be dismissed.  *See Native American Arts, Inc. v. Contract Specialties, Inc.*, 2010 WL 658864, at *4 (N.D. Ill. Feb. 18, 2010) (rejecting "conclusory allegations" of jurisdiction that were refuted by affidavits).

## II.  NEW YORK IS THE EXCLUSIVE FORUM FOR CLAIMS AGAINST TD BANK

Even if the Court could exercise personal jurisdiction over TD Bank, Plaintiffs' claims against TD Bank should still be dismissed for the independent reason that the Escrow Agreement expressly provides that New York shall be the exclusive forum for such claims:

> All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in a court of applicable jurisdiction in the State of New York, and the parties hereto hereby submit to the exclusive jurisdiction of such courts . . . .  (Compl. Ex. 1 at 169.)

Illinois courts treat forum-selection clauses with obligatory exclusivity language—*e.g.*, "shall" and "exclusively" here—as mandatory clauses that are prima facie valid.  *See Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 937 (N.D. Ill. 2011) (applying Illinois law).  Such a clause may be avoided only if (i) the clause was included in the contract by fraud, (ii) the alternative forum is so "gravely difficult and inconvenient" that the resisting party would be

effectively "deprived of its day in court," or (iii) enforcement would "contravene a strong public policy of the forum in which the suit is brought." *Id.* (quoting *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993)). The Complaint has failed to allege such circumstances here, and it would be fundamentally unreasonable to allow Plaintiffs to circumvent the parties' intent and the express language of a contract to which they are not even parties. The Court, therefore, should dismiss the breach of contract claim against TD Bank under Rule 12(b)(3), in addition to 12(b)(6).

The Court should also dismiss the fraud claim under the forum-selection clause because it is "related to" the contract claim: the two claims arise from the same set of alleged facts and are duplicative. *See, e.g.*, *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (enforcing forum-selection clause for claims "concerning" agreement to fraud claim because fraud related to parties' contractual relationship, and "a dispute over a contract does not cease to be merely such because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance").

## III. THE COURT SHOULD DISMISS THE BREACH OF CONTRACT CLAIM

Even if the Court had personal jurisdiction over TD Bank and this were the appropriate forum, the Court should still dismiss the contract claim for the independent reasons that (i) the Complaint fails to allege the existence of a valid and binding contract, and (ii) Plaintiffs lack standing.

### A. The Complaint Fails to Allege the Existence of a Valid and Binding Contract.

Plaintiffs' breach of contract claim fails because they do not plead the most basic element—a valid and binding contract. *See Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 173 (S.D.N.Y. 2009) (dismissing claim for failure to allege valid contract

and explaining that "[a] breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal").[5]

In New York, when the parties "have not reached a final agreement on the fundamental terms of the deal, no *contract* has been formed." *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 309 (S.D.N.Y. 2006). New York courts routinely dismiss contract claims with such pleading failures. *See, e.g.*, *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (dismissing contract claim where plaintiff failed to "set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms . . . or [the counterparty's] assent to its terms"); *see also Childers v. New York Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (dismissing contract claim because the complaint alleged only the existence of a contract in a conclusory fashion, and did not include details, including the date it was entered into).[6]

Here, the documents attached to the Complaint demonstrate that the Escrow Agreement was not final. Indeed, the PPM expressly provides that "the Partnership *intends to enter into an Escrow Agreement*" that is "[s]*ubject to final approval of the Escrow Agent,*" and that "*a form* of the Escrow Agreement is attached hereto." (Compl. Ex. 1 at 35, 78, 78 n.9.) Moreover, the Escrow Agreement (i) is entitled "*Form* of Escrow Agreement"—unlike the Limited Partnership and Subscription Agreements that do not say "Form," (ii) is unsigned, (iii) includes a blank date in January 2015 on the first page but a blank date in March 2014 on the last page, and (iv) has a

---

[5] A court exercising diversity jurisdiction applies the forum state's choice of law rules, *see Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000), and in Illinois "the law applicable to a contract is generally that which the parties intended," and "when that intent is expressed in a choice of law provision, it should be followed." *See Apperson v. Ampad Corp.*, 641 F. Supp. 747, 750 (N.D. Ill. 1986). Here, the parties to the alleged Escrow Agreement chose New York law. (Compl. Ex. 1 at 170 ("This Agreement "shall be governed by and construed in accordance with the State of New York . . .")). But as discussed below, even if Illinois law applied, the result would be the same.

[6] Illinois courts do the same. *See, e.g.*, *Dunn v. Pace Suburban Bus Serv.*, 2001 WL 717476, at *3 (N.D. Ill. June 22, 2001) (dismissing breach claim for failure to allege existence of contract).

legend at the bottom of each page that states "Signature Page to Subscription Agreement." (*Id.* at 164–171.) The Complaint omits these inconvenient facts and does not have a single factual allegation to suggest that TD Bank ever entered into the contract—or when. For this reason alone, the breach of contract claim should be dismissed.

**B.      Plaintiffs Lack Standing.**

Even if Plaintiffs had pleaded the existence of a valid and binding contract, they lack standing to sue to enforce the contract because they are neither parties to the contract nor intended third-party beneficiaries. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing is a "threshold question in every federal case, determining the power of the court to entertain the suit"); *Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 441778, at *5 (E.D.N.Y. Feb. 7, 2011) (dismissing claim for breach of escrow agreement by alleged victim of fraud because plaintiff was not a party to, nor an intended beneficiary of, the escrow agreement at issue).

Once again, Plaintiffs' own words expose a fatal flaw in their claim. They assert "Plaintiffs were not a nominal party to the Escrow Agreement." (Compl. ¶ 96.) Further, they were not third-party beneficiaries because "the language of the contract . . . [did not] clearly evidence[] an intent to permit enforcement by the third-party[.]" *Abu Dhabi Commer. Bank*, 651 F. Supp. 2d at 185. Nowhere does the Escrow Agreement state or even suggest that it is for the investors' benefit. (Compl. Ex. 1 at 165.) To the contrary, the purpose of the Escrow Agreement was for TD Bank to hold in escrow the *LP's* capital. Consistent with that purpose, TD Bank informed *the LP*, not the Plaintiffs, when it received funds. (*See* Compl. Ex. 2.) Moreover, when the LP intended a contract to inure to the benefit of third parties, it knew how to accomplish that. For example, the Limited Partnership Agreement between the LP and each investor expressly provided that certain persons "shall be deemed a third party beneficiary." (*Id.*

10

at 129.) That the LP used explicit language in one agreement but not another demonstrates its intent to exclude Plaintiffs as beneficiaries to the Escrow Agreement.[7] Plaintiffs, therefore, lack standing to pursue their breach of contract claim, and it must be dismissed.

## IV. THE COURT SHOULD DISMISS THE FRAUD CLAIM (COUNT V)[8]

Like the contract claim, Plaintiffs' fraud claim would fail even if the Court had personal jurisdiction over TD Bank and this were the appropriate forum. The Court should dismiss the fraud claim because (i) the Complaint does not adequately allege fraud against TD Bank under Federal Rule 9(b), and (ii) it is entirely duplicative of the contract claim.

### A. The Complaint Does Not Adequately Allege Fraud Against TD Bank.

The Court should dismiss the fraud claim against TD Bank because the Complaint fails to allege that TD Bank (i) made *any* statements to Plaintiffs, let alone that it knowingly made a material false statement, or (ii) intended Plaintiffs to rely on such statements and that they relied to their detriment. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (affirming dismissal of fraud claim).[9] Given that Plaintiffs fail to allege any false statements by TD Bank—fraud's threshold requirement—the Complaint fails to satisfy

---

[7] *See Simon Prop. Grp., L.P. v. Michigan Sporting Goods Distribs., Inc.*, 837 N.E.2d 1058, 1072–73 (Ind. Ct. App. 2005) (reasoning that "if the parties had intended to include other rights and remedies [in a certain section of their contract], other sections of the [contract] indicate the parties knew how to include such language"); *Amro Intern., S.A.. v. Sedona Corp.*, 2010 WL 2813452, at *3 (S.D.N.Y. Jul. 6, 2010) (explaining that exclusion of attorney's fees provision from agreement was deliberate in light of same parties' inclusion of attorney's fees provision in concurrently executed agreement). Moreover, the Complaint's suggestion that Plaintiffs became third-party beneficiaries because the Subscription Agreement required them to send funds to TD Bank (*see* Compl. ¶ 108) is wrong. The Subscription Agreement's requirement does not change that the face of the separate Escrow Agreement, which evidences no intent to make investors third-party beneficiaries.

[8] Under Illinois choice of law principles, the law applicable to a tort claim is "that of the forum with the most significant contacts to the litigation . . . ." *Union Oil Co. of California v. John Brown E&C*, 1994 WL 535108, at *2 (N.D. Ill. Sept. 30, 1994). But it is unclear which forum has the most significant connection to the fraud allegations against TD Bank because, as discussed below, there are no such allegations independent from the breach of contract allegations. In any event, as demonstrated below, Plaintiffs' fraud claim fails under both Illinois and New York law.

[9] *See also Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y.1991) (dismissing fraud claim).

Rule 9(b)'s particularity requirement that a complaint provide details about the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Rather than mention TD Bank, the Complaint's fraud allegations focus on alleged misrepresentations in the marketing website alleged to have been operated by Defendant Tizi LLC. (*See* Compl. ¶¶ 111–113, 116.) The Complaint does not allege that TD Bank had any involvement with (or even knowledge of) that website. The failure to tie TD Bank to the allegedly false statements on the website—or any other allegedly false statements—warrants dismissal. *See, e.g.*, *Desimone v. Quicken Loans, Inc.*, 2011 WL 900947, at *2 (S.D. Ind. Mar. 15, 2011) (dismissing fraud claim because plaintiff "has not identified any false material statements made by these defendants on which [she] relied to her detriment"); *see also Coronet Ins. Co. v. Seyfarth*, 665 F. Supp. 661, 666 (N.D. Ill. 1987) (dismissing fraud claims and explaining that "[w]here there are allegations of a fraudulent scheme with multiple defendants . . . the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the action against the particular defendant").[10]

Instead of the requisite specific factual allegations, the Complaint can muster only conclusory allegations that impermissibly lump all Defendants together—*e.g.*, that "the Defendants operated a scheme . . . to fraudulently deprive the Plaintiff[s] . . . of their investment," that "[t]he benefit of this fraud inured to all Defendants: it gave them money and time," and that "Defendants are jointly and severally liable for this fraud." (Compl. ¶¶ 60, 121–22.) These are the exact types of "group pleading" allegations that courts routinely dismiss. *See,*

---

[10] *See also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (explaining that "[w]here multiple defendants are asked to respond to allegations of fraud, the Complaint should inform each defendant of the nature of his alleged participation in the fraud").

*e.g.*, *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (listing cases that "rejected complaints that lumped together multiple defendants"); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328–29 (7th Cir. 1994) (explaining that "when the complaint accuses multiple defendants of participating in the scheme to defraud, Plaintiffs must take care to identify which of them was responsible for the individual acts of fraud"); *Miner v. Fashion Enters., Inc.*, 342 Ill. App. 3d 405, 420 (1st Dist. 2003) (noting that complaint's failure to identify which defendant made alleged misrepresentation was a "glaring defect").[11]

Indeed, the Complaint's only specific allegation as to TD Bank, that "[t]he LP . . . wrongfully—with scienter and full knowledge of falsity—inform[ed] TD that the Holdback Trigger had been satisfied" (Compl. ¶ 91), suggests that TD Bank was the victim of fraud. The Complaint provides no factual basis, however, to demonstrate that TD Bank was involved in perpetrating the alleged fraud.[12] In other words, it demonstrates *the opposite* of fraud.

**B.    The Fraud Claim is Duplicative of the Contract Claim.**

The fraud claim fails for the additional reason that it is duplicative. The Complaint does not allege any wrongdoing by TD Bank apart from the alleged premature release of Plaintiffs' funds. Because that same alleged conduct underlies the Complaint's breach of contract allegations, the fraud claim is entirely duplicative and should be dismissed. *See Krantz v. Chateau Stores of Canada Ltd.*, 256 A.D.2d 186, 187 (1st Dep't 1998); *accord HSH Nordbank*

---

[11] *See also Double Alpha, Inc. v. Mako Partners, L.P.*, 2000 WL 1036034, at *3 (S.D.N.Y. July 27, 2000) (dismissing fraud-related claims where complaint failed to separate the multiple defendants).

[12] Moreover, there is no basis to hold TD Bank liable for its customer's alleged fraud. *See Bell Bros. v. Bank One, Lafayette, N.A.*, 116 F.3d 1158 (7th Cir. 1997) (declining to hold bank that acted as escrow agent responsible for customer's RICO scheme); *Bonded Fin. Servs. Inc, v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988) (bank not liable for customer's fraudulent conveyance); *see also In re Agape Litig.*, 681 F. Supp. 2d 352 (E.D.N.Y. 2010) (bank not liable for customer's Ponzi scheme).

*AG v. UBS AG*, 95 A.D.3d 185, 206 (1st Dep't 2012) (holding misrepresentation cannot "concern[] the performance of the contract itself").[13]

## CONCLUSION

For the foregoing reasons, TD Bank respectfully requests that the Court dismiss the Complaint's claims against it with prejudice.

Dated: February 8, 2019

Respectfully submitted,

Edward N. Moss (admitted *pro hac vice*)　　/s/ Kevin B. Duff
Nathaniel Asher (admitted *pro hac vice*)　　Kevin B. Duff
O'MELVENY & MYERS, LLP　　　　　　Michael Rachlis
7 Times Square　　　　　　　　　　　　　RACHLIS DUFF PEEL & KAPLAN, LLC
New York, NY 10036　　　　　　　　　　524 South Dearborn Street, Suite 900
(212) 326-2000　　　　　　　　　　　　Chicago, IL 60605
　　　　　　　　　　　　　　　　　　　(312) 733-3950

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant TD Bank, N.A.*

---

[13] *See also Dunlap v. Switchboard Apparatus, Inc.*, 2012 WL 1712554, at *9 (S.D. Ind. May 15, 2012) (explaining that fraud plaintiff must establish that defendant committed separate and distinct tort that resulted in injury different from that resulting from the breach of contract).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2019, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.


/s/ Kevin B. Duff