UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINA DOU, *et al.*, | ) |
| | ) No. 18 CV 7865 |
| Plaintiffs, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| CARILLON TOWER/CHICAGO LP, *et al.*, | ) |
| | ) |
| | ) June 5, 2020 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

In this class action lawsuit, Plaintiffs filed the current motion for negative inferences and discovery sanctions against Defendants Carillon Tower/Chicago LP, Forefront EB-5 Fund (ICT) LLC, Symmetry Property Development II LLC, and Jeffrey Laytin (collectively "Defendants") for their admitted violation of this court's March 17, 2020 order and what Plaintiffs characterize as Defendants' "other failures" in discovery. (R. 226, Pls.' Mot. at 1-2.) For the following reasons, the court finds that Defendants' violation of its order is sanctionable, but a negative inference sanction is not proportionate to Defendants' conduct:

**Background**

The court describes the history of discovery in this case only to the extent necessary to provide context for the arguments underlying Plaintiffs' motion for sanctions. According to the amended complaint, Plaintiffs collectively invested approximately $49.5 million in a downtown Chicago real estate project ("the Project") spearheaded by Defendants. (R. 69, First Am. Compl. at 1-2.) Plaintiffs

charge that Defendants stole their invested funds from the escrow account held with TD Bank, N.A. ("TD Bank"). (Id. ¶¶ 23, 30.) They allege that construction on the Project was scheduled to begin in 2015, but "no shovel was ever put into the ground" because the Project "does not exist and will never exist." (Id. at 1-2, ¶ 48.) Plaintiffs therefore claim that they are victims of a fraud perpetrated by Defendants and seek the return of their money. (Id. ¶¶ 123-134.)

During discovery the main point of contention among the parties has centered around Plaintiffs' efforts to determine the present location of their money. At a hearing on February 21, 2019, the court noted that "getting information about . . . where the money is, is the key to everything in this case." (R. 71, Hr'g Tr. at 6-7.) In September 2019 Plaintiffs moved to compel Defendants to produce outstanding discovery responses to get to the bottom of where Plaintiffs' money went. (R. 157, Pls.' Mot. to Compl.) At the time, Defendants had answered Plaintiffs' requests only partially, had served unverified responses littered with objections, and had not turned over a single document. (Id. ¶¶ 6-7.) The following production request is pertinent to Plaintiffs' present motion:

> **REQUEST FOR PRODUCTION NO. 5**: Produce the chronological banking and accounting records for the approximately $49 Million in Chinese investor funds from the point in time those funds were released from the T.D. Bank Escrow fund through to the present. Those records should, without limitation, include the release to Carillion Tower/Chicago LP, the loan to Symmetry Tower/Chicago Properly Owner LLC, and subsequent spending—showing each expenditure and recipient, each asset or service purchased, and the location of any remaining current holdings/funds and the party and/or entity(ies) that control the account(s) where any such remaining Chinese investor funds are being held currently.

(R. 157-1, Ex. at 11.) On November 7, 2019, the court granted Plaintiffs' motion to compel in part and ordered Defendants to answer and produce documents to select discovery requests, including Request No. 5, by November 21, 2019. (R. 175.) The case was then referred to this court for discovery supervision. (Id.; R. 176.)

In December 2019 Plaintiffs filed a motion for default judgment based in part on Defendants' continued failure to obey the court's November 7, 2019 order. (R. 179, Pls.' Mot. for Default Jdg.) Although Plaintiffs withdrew their demand for litigation-ending sanctions, this court awarded Plaintiffs sanctions for Defendants' failure to "make any effort to comply with the subject order" and made it clear that this course of conduct is not acceptable. (R. 196.) Specifically, the court assessed a fine of $1,000 for each week Defendants remained out of compliance with the court's November 7, 2019 order and required Defendants to pay Plaintiffs' attorney's fees. (Id.) Despite the accumulating fine, nearly a month passed before Defendants produced their overdue discovery responses on February 24, 2020. (R. 208.) In the interim, TD Bank produced bank statements in response to Plaintiffs' subpoena, showing transactions for all accounts in the names of each Defendant from 2014 forward. (R. 192, TD Bank's Mot. for Protective Order at 1.)

In an effort to resolve the key factual issue in this case and propel this litigation forward, the court ordered Defendants to submit a chronology by March 13, 2020, showing with citations to TD Bank records how the funds Plaintiffs invested flowed through Defendants and their related entities to outside entities and vendors. (R. 208.) On March 17, 2020, the court entered an order granting

3

Defendants' request for a 21-day extension to submit this chronology. (R. 218.) In that order the court established a "firm deadline" of April 3, 2020. (Id.) The court also noted that the unfolding public health crisis would not delay Defendants' obligation to submit the chronology by the deadline. (Id.) This court further warned Defendants that if they did not comply with the court's order, it would entertain a motion for negative inferences to be drawn from their failure. (Id.)

Defendants ignored this order and instead filed a report informing the court that they could not meet the deadline because of the "stay at home" or "shelter in place" orders and "problems with counsel's home wifi connection." (R. 225, Defs.' First Report ¶¶ 2-3.) In their report, Defendants represented to this court that they would "file the chronology no later than [] April 8, 2020." (Id. ¶ 3.) Defendants never requested, nor did this court approve such an extension. Four days after Defendants' production deadline, on April 7, 2020, Plaintiffs filed the current motion seeking an adverse inference sanction, among other forms of sanction, based on Defendants' failure to comply with this court's March 17, 2020 order. (R. 226, Pl.'s Mot. at 2.) Meanwhile, Defendants' self-extended April 8, 2020 deadline to file the chronology came and went without any progress. In their response to Plaintiffs' motion, filed on April 28, 2020, Defendants admit their failure to comply with the court-ordered deadline and resolved to "report to the Court with either the completed chronology or a date to provide it on May 1, 2020." (R. 232, Defs.' Resp. at 8.)

4

After the parties fully briefed the current motion for sanctions, Defendants filed a series of reports further extending their self-extended deadlines to submit the chronology, without seeking the court's permission for any extension. (R. 234, Defs.' Second Report ("no later than May 8, 2020"); R. 236, Defs.' Third Report ("will provide the Court with an update no later than May 15, 2020"); R. 242, Defs.' Fourth Report ("If defendants have not produced the chronology to the Court and plaintiffs by May 22, 2020 . . . they will file a further report"); R. 244, Defs.' Fifth Report (offers no date).) Again, Defendants have never requested, nor has this court approved, an extension of the firm deadline that this court set in its March 17, 2020 order. Not surprisingly, Defendants still have not produced a chronology.

## Analysis

Plaintiffs request sanctions for Defendants' failure to produce a chronology in accordance with this court's March 17, 2020 order and for other discovery failures. The court's authority to sanction a party flows from Federal Rule of Civil Procedure 37(b)(2), under which sanctions are available against a party that "fails to obey an order to provide or permit discovery," and its inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process," *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Available sanctions under Rule 37 range from monetary sanctions to dismissal, including adverse inference jury instructions. *See Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, No. 00 CV 5658, 2002 WL 1433584, at \*2 (N.D. Ill. July 2, 2002). Whether invoking Rule 37 or exercising its inherent power, the court must ensure that whatever sanctions are

5

imposed are "proportionate to the circumstances." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019), *petition for cert. filed* (U.S. Oct. 30, 2019) (No. 19-6447).

### A.  Defendants' Noncompliance

Plaintiffs' first argument is that Defendants should be sanctioned because they failed to comply with this court's order of March 17, 2020, which directed Defendants to submit a chronology showing the flow of Plaintiffs' money by April 3, 2020. (R. 226, Pls.' Mot. at 1-2.) Defendants "acknowledge that they failed to produce a chronology . . . by the Court-imposed deadline." (R. 232, Defs.' Resp. at 1.) Nonetheless, Defendants insist that sanctions are not warranted because: (1) the pandemic and the resulting stay-at-home orders have constrained working conditions; (2) their overall discovery record demonstrates substantial effort and compliance; and (3) the court's March 17, 2020 order was not a conventional discovery order. (Id. at 3-6.) The court addresses each of these arguments in turn.

Defendants assert that the stay-at-home orders prompted by the coronavirus pandemic have "delayed and impacted their ability to review the underlying bank records" that they are citing to in the chronology. (Id. at 3.) More specifically, they contend that corresponding with TD Bank about the records it produced has been particularly difficult because "day-to-day bankers are furloughed," "not receiving or answering email," and "[a]ll but one TD branch is closed." (Id.) Defendants also contend that their "small staff" and "outside lawyers and accountants," with whom they presumably must communicate and coordinate to complete the chronology, are facing "similar restrictions and constraints on their work." (Id.) They implore the

6

court to consider that when it determined that the Northern District of Illinois's general orders in response to the unfolding public health crisis would not delay Defendants' obligation to submit a chronology by April 3, 2020, "the score, scale[,] and impact of the crisis were not fully apparent." (Id.)

While it is true that the country was in the early stages of the novel coronavirus outbreak when the court issued its order on March 17, 2020, Defendants' failures to comply with discovery orders precede the World Health Organization's declaration that the spread of COVID-19 had become a pandemic. The information this court ordered Defendants to produce by April 3, 2020, was the subject of Plaintiffs' motion to compel filed in September 2019, (R. 157), which the court granted in part and denied in part on November 7, 2019, (R. 175). Specifically, the court ordered Defendants to "[p]roduce the chronological banking and accounting records for the approximately $49 Million in [Plaintiffs'] invest[ed] funds from the point in time those funds were released from the T.D. Bank Escrow fund through the present." (Id. at 4 (directing Defendants to produce responsive documents to production Request No. 5 by November 21, 2019); see also R. 179, Pls.' Mot. for Default Jdg. at 7.) Defendants did not comply with this requirement and continued to flout it even after the court provided them with multiple opportunities to comply and imposed modest monetary sanctions. (R. 196; R. 208; R. 218.)

Although Defendants' dilatory conduct had been on-going for months, it only increased with the outbreak of the coronavirus. In the time since Plaintiffs filed the present motion, Defendants have represented to this court that they would "provide

7

the chronology no later than May 8, 2020," (R. 234, Defs.' Second Report), and then maybe by May 15, 2020, (R. 236, Defs.' Third Report), and, most recently, by some future date unknown to them, (R. 244, Defs.' Fifth Report). In addition to their bald assertion that the coronavirus pandemic delayed their ability to submit the chronology on time, Defendants now state that "[o]ne of the difficulties in completing the chronology arose from a bank statement in the production" that "does not have as much detail compared to other bank statements." (R. 236, Defs.' Third Report ¶ 2.) They say that they obtained additional bank statements from TD Bank but that the statements do not "have bates numbers" and, therefore, they cannot "complete the chronology with citations as ordered" by this court. (R. 244, Defs.' Fifth Report ¶¶ 3-5.) This attempt to blame TD Bank for Defendants' continued failure to submit the chronology is unavailing. TD Bank is a third-party entity that merely responded to a records subpoena. The blame lies solely with Defendants.

The court is keenly aware of the challenges that the coronavirus pandemic presents to traditional litigation, but it is not the right of a party to restructure court deadlines at will. More importantly, Defendants have yet to explain why the current public health crisis has impacted their ability to explain the flow of funds, which they controlled, by examining their own bank records. If Defendants were unable to submit the chronology by the court-ordered deadline of April 3, 2020, for whatever reason, they should have requested an extension of the deadline rather than acting unilaterally to extend it through a series of "reports." At this point

8

more than two months have passed since the court's deadline, yet Defendants still have not submitted a chronology. The court therefore is unpersuaded by Defendants' assertion that the pandemic is "the most compelling reason"—or even a legitimate reason—why sanctions are not warranted in this case.[1]

Defendants' attempt to excuse their recent conduct by asserting that they have otherwise substantially complied with discovery requirements is similarly unavailing. Defendants argue that sanctions are not warranted because, aside from their failure to comply with the court's November 7, 2019 and March 17, 2020 orders, they have "otherwise complied with their discovery obligations." (R. 232, Defs.' Resp. at 5.) But their matter-of-fact admission of their ongoing defiance of court orders hardly supports their characterization of their discovery history as one of substantial effort and compliance. Moreover, Defendants' suggestion that their failure to fully comply with the court's November 7, 2020 order is somehow absolved by the fact that "they paid in full the resulting sanction" imposed by this court, (id.), reflects a troubling misunderstanding of the purpose of the prior sanctions order. Satisfying a sanctions order does not relieve a party of its future discovery obligations or wipe the slate clean with respect to the history of its discovery conduct. For these reasons, the court rejects Defendants' discovery record argument.

---

[1] Defendants' complaint that Plaintiffs are being allowed to "take full advantage" of this District's general orders that have extended discovery deadlines in response to the pandemic and they are not, (R. 232, Defs.' Resp. at 5), is not well-taken given Defendants' own continued failures to adhere to court deadlines.

9

Defendants' argument that the court's March 17, 2020 order is not a conventional discovery order is also without merit. First, courts have broad discretion to manage discovery in a fashion that supports the full disclosure of all relevant and discoverable information under Rule 26. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). Here, as already discussed, Plaintiffs requested a chronology of sorts in their initial production requests and, despite their partially successful motion to compel, Defendants failed to produce it. Therefore, the court did not transcend its authority when it ordered Defendants to produce information that was originally requested by Plaintiffs, albeit with citations to records subsequently produced by TD Bank.

Moreover, the fact that the court has ordered Defendants to cite to records produced by TD Bank does not, as Defendants assert, make the chronology "a Court-devised affirmative analysis project." (R. 232, Defs.' Resp. at 5.) Rather, the citations are necessary to aid Plaintiffs in identifying the expenditures made by Defendants and their related entities as well as the present location of any remaining invested funds. Only Defendants are privy to this information. The essential theory of Plaintiffs' case is that Defendants wrongfully diverted Plaintiffs' money from escrow for Defendants' own benefit unrelated to the Project. (R. 69, First Am. Compl. at 2.) In light of Plaintiffs' fraud theory, the chronological flow of

10

their money and the bank records revealing that chronology are indeed the key to this case.

Finally, Defendants unpersuasively argue that the court should "grant them, retrospectively, the time they need to complete the [chronology] to their satisfaction." (R. 232, Defs.' Resp. at 6.) According to Defendants, they are entitled to this additional time because, according to them, the court's order shifted the burden of assessing the records produced by TD Bank from Plaintiffs to Defendants. (Id.) They also assert in a footnote that they are uncomfortable preparing a chronology because Plaintiffs have a claim for accounting. (Id. at n.1.) Again, the court has not ordered Defendants to present an analysis of the strengths and weaknesses of their case. It merely required Defendants to cite to their own bank records to show where Plaintiffs' money went. For these reasons, Defendants' failure to submit the chronology by April 3, 2020, amounts to a sanctionable Rule 37 violation.

## B. Other Failures

In addition to their argument regarding Defendants' failure to provide the ordered chronology, Plaintiffs argue that sanctions are warranted because of "other failures."[2] (R. 226, Pls.' Mot. at 2.) But Plaintiffs' arguments here are underdeveloped and unsupported. For example, Plaintiffs take issue with

---

[2] In their reply, Plaintiffs also criticize Defendants for failing to disclose in discovery "all of the lawsuits against them," including those involving the land parcels identified for the Project. (R. 233, Pls.' Reply at 3-4.) Because Plaintiffs raise this issue for the first time in their reply, the court will not address it. *See Mendez v. Perla Dental*, 646 F.3d 420, 424 (7th Cir. 2011) ("[A]rguments raised for the first time in the reply brief are waived.").

11

Defendants' failure to produce a copy of a pertinent loan agreement between the lender, Defendant Carillon, and the borrower, a related non-party entity referred to as the "Project owner," because they are "saying they cannot find it." (Id. at 2-3.) But Plaintiffs point to no proof that Defendants have falsely represented "that they cannot locate the complete original signed copy" of the loan agreement. (R. 232, Defs.' Resp. at 6.) Plaintiffs also accuse Defendants—specifically Jason Ding, the manager of Defendant Symmetry—of misrepresenting facts about the Project owner's ability to "receive a loan, make payments, and then pay back the loan," and lying under oath about a prospective loan related to a real estate project in Hawaii. (R. 226, Pls.' Mot. at 3-4.) But the court is unable to evaluate the propriety of these accusations because the deposition transcript on which Plaintiffs rely is not part of the record. (See R. 288 (explaining circumstances leading to the documents Plaintiffs purported to file under seal as exhibits to their motion for sanctions being removed from the docket).) In short, Plaintiffs did not sufficiently support their claim that discovery sanctions are warranted for "other failures."

**C.    Sanctions**

Having concluded that Defendants failed to submit a chronology by the court-ordered deadline of April 3, 2020, and in light of their continued defiance of the court's order, the court must fashion an appropriate sanction. The court has broad discretion in its choice of sanction. *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976); *Long v. Steepro*, 213 F.3d 983, 988 (7th Cir. 2000) (noting "courts have considerable discretion in imposing sanctions to control

12

their dockets"). To this end, the court is not required to apply the "least drastic" sanction when confronted with a party's failure to comply with a discovery order, but rather should assign a sanction that is proportionate to the circumstances. *See River v. City of Chi.*, 333 F.3d 780, 784 (7th Cir. 2003). "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Donelson*, 931 F.3d at 569.

Plaintiffs argue that the court should exercise its authority under Rule 37 to issue a negative, or adverse, inference jury instruction relative to Defendants' "refus[al] to disclose where [Plaintiffs'] money is[,] or where it went." (R. 226, Pls.' Mot. at 2.) They correctly note that this court said that it would be willing to entertain such a sanction if Defendants failed to submit a chronology by the April 3, 2020 deadline. (Id.) Defendants respond that the court should refrain from imposing an adverse inference sanction because this sanction is reserved for "egregious circumstances, wholly absent here, such as where a party willfully destroys evidence." (R. 232, Defs.' Resp. at 2.) According to Defendants, "[t]he most sanction the Court should impose . . . if any, is a modest monetary sanction for [their] delay" in submitting the chronology. (Id.)

An adverse inference instruction has been deemed as being among "the most extreme sanctions available pursuant to the Federal Rules of Civil Procedure and this Court's inherent power." *See Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 355 (N.D. Ill. 2016). For this reason, the Seventh Circuit requires a finding that the

13

offending party acted in "bad faith," meaning, in this context, for the purpose of hiding adverse information. *See also Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) ("A party destroys a document in bad faith when it does so for the purpose of hiding adverse information.") (quotations omitted). The movant bears the burden to make this showing, *id.*, though the court may also rely on "the totality of the circumstances" to infer bad faith, *see S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982).

The court agrees with Plaintiffs that Defendants' dilatory conduct detailed above demonstrates bad faith. However, whether Defendants' conduct in failing to submit a chronology warrants the "extreme sanction[]" of an adverse inference instruction is a closer call. On the one hand, Defendants' misconduct is extreme in that it challenges the integrity of the judicial system and flouts their obligations under the federal discovery rules, which were crafted to "enhance the fairness of the litigation process by avoiding a trial (or summary judgment) by ambush." *MemberSelect Insur. Co. v. Electrolux Home Prods., Inc.*, No. 13 CV 4097, 2015 WL 6083201, at *8 (N.D. Ill. Oct. 15, 2015). Their conduct also challenges this court's power to manage and ensure the expeditious resolution of cases on its docket. *See Chambers*, 501 U.S. at 43 (stating courts are vested with the control "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Indeed, the court's warnings to Defendants that their discovery failures were not acceptable and could result in the imposition of an adverse inference sanction were ineffective. (R. 196; R. 218.) Further, Defendants history of noncompliance with

14

discovery orders despite the imposition of lesser monetary sanctions suggests that such a sanction would be ineffective in this instance. (See R. 208 (noting "Defendants produced discovery responses on February 24, 2020," nearly a month after the court "assessed [a] $1,000 fine, to be paid to Plaintiffs, for each week they are out of compliance with the court's November 7, 2020 order," (R. 196)).)

But on the other hand, at this juncture, discovery is still ongoing, and the court has not yet scheduled a deadline for completing fact discovery. As of the filing of Defendants' response, Plaintiffs had yet to issue their own discovery responses. (See R. 232, Defs.' Resp. at 5.) And, while Plaintiffs were forced to expend attorney's fees and costs in pursuing the present motion, this financial prejudice can be addressed by requiring Defendants to reimburse Plaintiffs for the additional attorney's fees that they incurred.

Considering these factors, the court finds that an adverse inference instruction would be out of proportion to Defendants' conduct—which the court has found is limited to their failure to comply with the court's March 17, 2020 order. That said, the court does not condone Defendants' flagrant disregard of the court-imposed deadline and agrees with Plaintiffs that "a stiff penalty" is in order. Accordingly, Defendants are ordered to: (1) produce the chronology of funds by no later than June 26, 2020[3]; (2) pay monetary sanctions in the amount of $18,000 ($2,000 per week from April 3, 2020, to the date of this order) to Plaintiffs; (3) pay

---

[3] If Defendants fail to comply with this new deadline, the court would again entertain a motion to impose the negative inference sanction on the basis that they are actively concealing adverse information.

an additional monetary sanction of $1,000 per day from the date of this order to June 26, 2020, or until a complete chronology accounting for the invested funds is produced, whichever is earlier; and (4) pay Plaintiffs' attorney's fees in connection with briefing the motion for sanctions.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for negative inferences and discovery sanctions is granted in part and denied in part.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**