## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Lina Dou, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-CV-07865 |
| | ) | |
| v. | ) | Judge Charles P. Kocoras |
| | ) | Magistrate Judge Young B. Kim |
| Carillon Tower/ Chicago LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

Plaintiffs Lina Dou, Tingyang Shao, Yixuan Tao, Xiuqin Xing, Emmy Go, Yanming Wang, Shiyang Xiao, Lihong Zhan, Geli Shi, (the "Named Plaintiffs"), individually for themselves and on behalf of all members of the Class, as certified by the Court in its Order of September 11, 2019 (Doc. no. 152) (together with the Named Plaintiffs, "Plaintiffs"), less the 33 class members who timely served executed opt-out forms upon Class Counsel during the Notice period, a complete list of the amended Settlement Class List, including all opt-outs and non-class member credit facility participants, is appended hereto as **Exhibit 1**, and Defendants Carillon Tower/Chicago LP, Forefront EB-5 Fund (ICT) LLC, Symmetry Property Development II LLC, and Jeffrey L. Laytin ("Defendants") hereby jointly move for final approval of a Settlement Agreement they reached in this matter, appended hereto as **Exhibit 2**, and for approval of the Plan of Allocation as contemplated by the terms of the Settlement Agreement. Plaintiffs and Defendants are referred to collectively herein as the "Parties," and in support of the instant motion, state as follows:

## I. Introduction.

This lawsuit is a class action filed on behalf of 83 Chinese nationals who each made a $500,000 Capital Contribution and paid a $50,000 Administrative Fee to become limited partners in a development project known as Carillon Tower, managed by Defendants. Plaintiffs' Amended Complaint alleges claims against the Defendants for violations of the Securities Exchange Act of 1934 (15 U.S.C. 78(j)), violations of the Illinois Securities Act (815 ILCS 5/8 et seq.), Breach of Contract, Fraud, Breach of Fiduciary Duty, and Appointment of Third-Party Administrator.

On November 5, 2020, the Parties entered into a comprehensive Settlement Agreement to resolve this matter. It provides that each Plaintiff who does not opt out of the class shall receive a full refund of their Capital Contribution and Administrative Fee ($550,000 per Plaintiff). On December 3, 2020, this Honorable Court granted Preliminary Approval of the Settlement Agreement attached as Exhibit 2. (Doc. no. 300). Pursuant to that Order, Class Counsel directed the Class Notice to all class members, which notified each class member of the 45-day class notice period and provided each class member with a blank opt-out form and instructions on the necessary timing and form of duly opting-out of this class settlement. During the class period, Class Counsel received thirty-four timely delivered, and duly executed, opt-out forms. One class member who delivered an opt-out form timely delivered an executed request to retract the opt-out form and remain in the class settlement. That written and signed request to rejoin is attached as **Exhibit 3**. Defendants now know how many Plaintiffs are participating in the class, and shall obtain a credit facility sufficient to fund the settlement and recapitalize the project. Within forty-five days of the entry of the Final Approval and Plan of Distribution order, attached hereto as **Exhibit 4**, Defendants shall deposit 100% of the

- 2 -

settlement funds into escrow with a title insurance company on the closing date, which is expected to be March 22, 2021, to be held and disbursed in tandem with the Release Documents.

As protection and security to the Plaintiffs, the Settlement Agreement is structured so that the money to fund the settlement shall flow directly from the credit facility into the title company escrow utilizing the "earmark doctrine," so that no corporate and/or individual Defendant ever possesses any settlement funds. The Settlement Agreement also protects Plaintiffs in that, if Defendants fail to fund the escrow according the terms of the Settlement Agreement, Defendants shall be liable for liquidated damages, and, if Defendants fail to fund within the subsequent grace period, the parties shall be restored to their litigation position as if the Settlement Agreement never occurred, and Plaintiffs' suit shall proceed accordingly.

For reasons set forth further below, the parties jointly request that the Court enter an order (1) granting this Motion for Final Approval and Plan Distribution, (2) approving the List of Class Members who are Opting-out of the class settlement, attached hereto as Exhibit 1, (3) continuing the stay of these proceedings until the Defendants fully find the settlement escrow account and dismiss the case, or, in the alternative, the Liquidated Damages and/or Bad Faith clauses of the settlement are triggered and the case is reinstated, (4) approving the Plan of Distribution to the Class Members upon escrow funding, (5) approving the payment of all Attorney's Fees to Class Counsel pursuant to the Settlement Agreement, and (6) entering the Order granting Final Approval, attached hereto as Exhibit 4.

## II. Factual Background and Procedural History.

Plaintiffs and Class Members are 83 Chinese nationals who invested in a real estate development project known as Carillon Tower. Each plaintiff made a $500,000 Capital

- 3 -

Contribution and paid a $50,000 Administrative Fee to become limited partners in the project. Defendants are the limited partnership entity and developers of parcels of land on the corner of Wabash Avenue and Superior Street in Chicago, Illinois, on which the Carillon Tower project was intended to be developed.

Plaintiffs made their investments in late 2015 or early 2016, with the expectation that development of the project would commence in 2016. In tandem with their investment, Plaintiffs applied to an immigration program known as EB-5, in which foreign nationals who make job-creating investments in the United States may apply for green cards and immigrate. However, the project ran into approval delays with the City of Chicago, delays related to historic preservation concerns, and other delays. To date, Defendants have not begun major construction work.

Plaintiffs' Amended Complaint (ECF #69) pleads claims against Defendants for violations of the Securities Exchange Act of 1934 (15 U.S.C. 78(j)); violations of the Illinois Securities Act (815 ILCS 5/8 et seq.); Breach of Contract; Fraud; Breach of Fiduciary Duty; and Appointment of Third-Party Administrator. Broadly, Plaintiffs allege that the project failed, and Defendants misappropriated their investment, made misrepresentations, breached duties to Plaintiffs, and breached the limited partnership agreement. Plaintiffs demand a return of all monies they invested in the project, plus interest and other relief.

Defendants deny liability, contend Plaintiffs' funds have been appropriately invested in the project, and contend that Defendants can obtain approvals and complete development of the project, consistent with their rights under the project documents governing Plaintiffs' investment.

The Parties have conducted substantial motion practice in this matter. Plaintiffs moved for class certification (ECF #67), which the Court granted on September 11, 2019 (ECF #152). Plaintiffs also moved (twice) for a preliminary injunction seeking to freeze defendants' assets (ECF #24, #123, #140), which defendants opposed by filing a record of their development activities (ECF #61, #135, #142). The Court denied the motions to freeze on September 11, 2019 (ECF #123). Defendants moved to dismiss pursuant to Rule 12(b)(6) (ECF #92), which the Court denied on July 12, 2019 (ECF #132). Plaintiffs also made numerous motions for sanctions, contempt, and default, related to performance of a settlement agreement with the initial plaintiff, Annabelle Yao, as well as Defendants' compliance issues with discovery orders.

The Parties have also conducted substantial discovery, including taking the Rule 30(b)(6) corporate representative deposition of Defendants, conducting an evidentiary contempt hearing before this Court, issuing and answering written discovery, and producing and reviewing thousands of pages of Defendants' banking records and project development documents.

On October 14, 2020, the parties met at the offices of Class Counsel to discuss the resolution of the pending claims and achieve a full refund for the plaintiffs and class members. As a result of these and subsequent negotiations, the parties reached an agreement to resolve this matter, which is attached hereto as Exhibit 2. Upon execution, the Settlement Agreement was submitted to the Court *in camera* on November 5, 2020.

### III. The Settlement.

#### A. The Settlement Class.

This Court certified a class on September 11, 2019, consisting of "Chinese nationals who are limited partners in the Carillon Tower/Chicago LP and who have each paid

- 5 -

$550,000.00 into that partnership." (ECF #152 at p. 3). Two investors, Annabelle Yao and Tu Xiaofeng, entered into settlement agreements with Defendants prior to class certification, obtained judgments enforcing those settlement agreements, and therefore are not eligible to participate in the class. Three persons who invested in the Carillon Tower project have received denials of their I-526 applications, which means they are entitled to an automatic refund under provisions set forth in the project documents.

The "Settlement Class" consists of all other Plaintiffs and members of the certified class who did not timely opt out of the class. As part of the Court approved Class Notice, all the class members received an updated Economic Report describing Defendants' revised development plan for the Carillon Tower project. Those investors who wished to remain limited partners and investors in the project (thereby remaining eligible to obtain immigration status pursuant to the EB-5 program) have affirmatively opted out of the class, the complete list of opt-outs is attached hereto as Exhibit 1.

### B.    The Settlement Monies.

The Settlement Agreement provides that Defendants shall pay a total sum of $550,000.00 per class member who does not opt-out of the class to fund their settlement obligations in this matter and $150,000 of additional attorney's fees ("Settlement Monies"). The aggregate amount of Settlement Monies will be funded no later than 45 days after the Court's entry of a Final Approval Order, which is expected to be March 22, 2021 (the closing date), subject to the "grace and cure" period enumerated under the Settlement Agreement. The settlement monies for the Settlement Class members, less the 33 opt-outs and the 5 non-class members, totals ($550,000.00 x 50) $27,500,000.00. There are 5 non-class members who either settled their claims prior to class certification or qualified for a refund prior to class

- 6 -

certification, but are never-the-less having their refunds paid through the establishment of this credit facility. Their monies total $2,551,875.00. Therefore the gross value of all settlement monies to be deposited in the settlement escrow trust account totals $30,201,875.00.

### C. Opt-outs and Administration of Settlement.

The Court has set a hearing on this Motion for Final Approval on February 4, 2021. The Settlement Class Notice issued to all class members within three (3) calendar days of the entry of the Court's December 3, 2020 order granting preliminary approval. (Doc. no. 300). Electronic delivery of the Settlement Class Notice was effectuated on all 83 Settlement Class Members and five additional non-class member credit facility participants. The Settlement Class Notice period concluded on January 21, 2021. On January 24, 2021, Class Counsel delivered to counsel for Defendants a certified list of all Class Members who timely delivered duly executed opt-out forms upon Class Counsel during the Class Notice Period. That number was 34 Class Members. During the Class Notice Period, one Class Member who previously delivered a duly executed opt-out form delivered a duly executed request to withdraw his opt-out form and participate in the Class Settlement. The Parties have agreed to allow this Class Member to withdraw his Opt-out form and participate in the Class Settlement. Therefore, the final number of Class Members opting-out is 33, with 50 Settlement Class members remaining in the class settlement and another five non-class member investors participating in the credit facility payout.

An escrow trust account was established with a title insurance company following this Court's entry of the order granting preliminary approval. Funds deposited by Defendants into the escrow account shall be held and disbursed in tandem with the executed Release Documents. The escrow trust account will be locked and only joint signatures from both

Defendants and Class Counsel can authorize the dispersal of the monies and items deposited into the escrow trust account.

Within 45 days of the entry of this Court's order granting final approval of this settlement, Defendants shall deposit 100% of the Settlement Monies into the escrow account by wire transfer. On that same day, the amounts due to each class member who has not opted out and the amounts due Class Counsel will be transferred out of the account by wire transfer. Once the electronic receipts proving the foregoing transfers are received, the fully executed Release Documentation will be distributed to the Defendants from the escrow trust account, and Plaintiffs will dismiss their action, with prejudice.

### D. There are no disputes relating to any Opt-Out.

The Settlement Agreement required that any class member wishing to opt out must have delivered a validly executed Opt-out form to Class Counsel on or before the last day of the Settlement Class Notice Period, which was January 21, 2021. The class member must prove timely delivery upon Class Counsel, not reasonable mailing, to establish receipt. The Settlement Agreement provides that any request to opt out received after the Settlement Class Notice Period will be deemed untimely unless all Parties agree to allow a class member to opt out of the class late. It further provides that any class member contesting the timeliness of their own opt-out must bring their dispute before this Court for hearing within 7 days of the end of the Class Notice Period.

The parties are not aware of any opt-out form being delivered after January 21, 2021, nor are the parties aware of any disputes as to the timeliness of the delivery of any opt-out form. As discussed *supra*, one class member sought to withdraw their timely delivered opt-out form, and the parties agree that this class member may participate in the settlement.

### E.     Liquidated Damages.

The Settlement Agreement provides that if the Defendants do not fund the escrow trust account by the agreed-upon date reflected in the Court's Order granting final approval, the Defendants shall be jointly and severally liable for liquidated damages for non-performance, subject to a 45-day grace and cure period.  The amount of liquidated damages escalates linearly over the grace and cure period, and at the end of the period is fixed at $25,000 for each class member who has not opted out and $250,000 to class counsel.  Defendants' liability for liquidated damages shall be secured by personal guarantees from Mr. Jeffrey Laytin and Mr. Jason Ding.

The Settlement Agreement provides that the liquidated damages can never constitute a set-off from any judgment, Order of the Court or collection effort on a judgment in this matter. Further, any payment of liquidated damages to class counsel cannot be used as a credit or offset for any monies due to class counsel or class members under any future settlement, order of the Court and/or judgment.  However, the Parties have agreed that the payment of any liquidated damages *can* be used to off-set any future settlement with a class member in this litigation.

### F.     Class Counsel's Application for Fees and Costs.

Defendants have agreed in the Settlement Agreement that Class Counsel are qualified to represent the class and Defendants do not contest their seeking approval to be confirmed as Class Counsel.  Defendants have further agreed that they will not contest Class Counsel seeking final approval of 25% of the gross recovery of each class member as costs, expenses, fees, incentive and multiplier under this settlement agreement.  Class counsel seek 25% of the $27,650,000.00 gross settlement class fund, which totals $6,875,000.00.  Defendants have agreed to pay Class Counsel $150,000 in additional attorneys' fees associated with the non-

settlement class members whose claims are being paid out through this credit facility. Thus, the total attorney's fees payable under the Settlement Agreement is $7,025,000.00. This figure represents 23.2% of the gross credit facility payout.

### IV. Legal Standard for Final Approval of Class Settlement.

A class action may not be dismissed, compromised or settled without the approval of the Court. Fed. R. Civ. P. 23(e). Although a putative class may satisfy any of the three Rule 23(b) categories, "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3)." *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir.1999). A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors pertinent to predominance and superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Ibid.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir.2016) (alterations and internal quotation marks omitted). However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems, for the proposal is that there be no trial." *Smith v. Sprint Commc'ns Co., L.P.*, 387 F.3d 612, 614 (7th Cir.2004) (quoting *Amchem*, 521 U.S. at 620) (internal quotation marks omitted).

As a general matter, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." In considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law, which underlie the merits of the dispute. *See, e.g., West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). A court may approve a settlement that would bind class members only if, after proper notice and a public hearing, the court determines that the proposed settlement is "fair, reasonable, and adequate." *Fed. R. Civ. P. 23(e)(2)*. Although a district court "consider[s] the fact in the light most favorable to settlement," *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir.1996) (internal quotation marks omitted), "the law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014)(internal quotation marks omitted); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014).

Indeed, the Seventh Circuit has "described the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014)(internal quotation marks omitted). It follows that "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman*, 768 F.3d at 629. In so doing, the court must be vigilant for evidence of collusion between the defendants, the class

representatives, and Class Counsel. *See CE Design, Ltd. v. King Supply Co.*, 791 F.3d 722, 725 (7th Cir.2015) ("*CE Design II*"); *Eubank*, 753 F.3d at 721.

### V.        The Settlement Is Fair, Reasonable, and Adequate.

#### A.        The Settlement Provides a Substantial Benefit to the Class.

The Settlement Agreement affords each Plaintiff who does not opt out of the settlement class a full refund of their $500,000 Capital Contribution and $50,000 Administrative Fee that they paid to become limited partners in the Carillon Tower project. "The most important factor" in determining whether a proposed settlement satisfies Rule 23 is the "strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir.2006)(citations omitted). Defendants' agreement to a *full* refund of all monies paid by each investor (rather than recovery of just the Capital Contribution) is a substantial concession to Plaintiffs' claims, because the Private Offering Memorandum for the Carillon Tower project stated that the Administrative Fee was non-refundable. While fees awarded to Class Counsel will be deducted from each class member's recovery, the Settlement Agreement nevertheless give settling class members a recovery similar to what they would have received if they prevailed on their claims at trial, yet without the costs and risks of trial. The settlement amount favors approval.

The Settlement Agreement also offers a substantial benefit to class members because it may offer a better chance of recovering their full investment than prevailing at trial. Defendants have stated in Court, and have communicated to Class Counsel as well, that the pendency of Plaintiffs' complaint in this matter (which accuses defendants of fraud and breach of fiduciary duty, among other things) makes it difficult for Defendants to come to final terms with a construction lender to deploy the necessary capital to support continued development of the

project. By reaching a Court-approved settlement of this matter, Defendants will be able to complete the final terms with a construction lender, which in turn will allow the project to be fully financed. Absent reaching a settlement, even if Plaintiffs were successful in pursuing their claims to a judgment, they might be left with the prospect of trying to collect against parcels of undeveloped land. Unless the project is fully financed, the judgement will be hard to collect.

Finally, the Settlement Agreement also affords a substantial benefit to members of the class who wish to opt *out* of the settlement class, and remain investors in the Carillon Tower project. By providing for resolution and dismissal of the Plaintiffs' complaint, it clears away a major obstacle impeding development of the Carillon Tower project. The settlement increases the likelihood that the project will be able to be fully capitalized as planned, which will allow investors who chose to stay in the project to remain eligible to obtain immigration status.

### B. Sufficiency of the Settlement Class

This Honorable Court has already certified the Class of Chinese investors, pursuant to Rule 23. (Doc. no. 152). In this settlement, the majority of class members do not wish to control the prosecution or defense of separate actions, as evidenced by their continued participation after receiving Class Notice. Similarly, those Class Members who wish to remain in the project, and who may yet wish to engage in individual litigation in the future, have served opt-out forms. There are no objectors to the settlement. Similarly, only one other piece of litigation associated with the issues was commenced by another investor in the State of New York that litigation having been resolved by settlement on an individual basis prior to this class settlement. There are no other actions relating to this project filed on behalf of investors in the Carillon project. As discussed *supra*, the desirability of concentrating the litigation of the claims in the particular forum is great because of the unique financial obstacles this litigation

- 13 -

presented to the Defendants in obtaining a credit facility to fund this settlement. Without concentrating the claims into one action that can be resolved through funding, this settlement would not be possible. Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication, which this settlement fairly and adequate does by provided each Class Member who wants a full refund of their investment in the Project a mechanism to receive that, particularly in a financial setting where any other avenue of recovery would likely fail.

### C. Both Sides Face Significant Challenges if the Case Goes Forward.

Class Counsel has devoted significant time to prosecuting this case, as the more than 300 docket entries clearly demonstrate. Class Counsel have also devoted significant time and resources to analyzing Defendants' banking and other records produced in the litigation. If the case does not settle, Plaintiffs are expected to file a Second Amended Complaint that brings third parties into the case, in an effort to recover expenditures of Plaintiffs' investment funds that will be challenged by Plaintiffs as improper. This will complicate and prolong the case, and will risk causing further reputational damage to Defendants, making it harder for them to attempt to proceed with development of the project.

At the same time, discovery has persuaded Defendants that class certification is subject to attack, and Plaintiffs' claims are vulnerable to summary judgment. Plaintiffs' complaint and answers to interrogatories and requests to admit demonstrate that Plaintiffs lack a common pattern of reliance, and the class might therefore be subject to a motion to de-certify. Defendants contend that Plaintiffs have failed to tender evidence that any Plaintiff made a decision to invest based on any misrepresentation by Defendants. Defendants also believe that Plaintiffs' breach of contract claims should be dismissed for lack of any provable damages,

because it is undisputed that the conditions of the Holdback were ultimately satisfied, regardless of when that occurred.

Both sides also face considerable obstacles in completing fact discovery. The Named Plaintiffs are Chinese nationals, who Class Counsel advised face state-imposed restrictions on their ability to give sworn testimony. The Named Plaintiffs have not produced any documents and may face discovery adversity if the case were to go forward. Defendants, for their part, have been subjected to discovery sanctions and will face continued threats if the case goes forward.

In sum, the path forward for both Parties in litigation, absent Court approval and performance of the Settlement Agreement, is likely to be protracted, expensive and contentious. For these reasons as well, the Parties and their counsel strongly believe that the Settlement Agreement is in their best interests, as compared to the prospect of continuing with the case.

### D. Judgment of Experienced Counsel is Entitled to Weight.

Based on their experience with similar cases and analysis of the issues raised in this action, the Parties' counsel share the view that the Settlement Agreement is fair and reasonable and in the best interests of the Class. In negotiating the proposed Settlement Agreement, Plaintiffs have had the benefit of highly skilled Class Counsel, with extensive experience in litigating complex nationwide class action litigation. Defense counsel is likewise experienced the defense of class actions, including shareholder class actions claiming misrepresentations analogous to the present matter.

Because of the detailed legal and actual analysis conducted by counsel for both parties, their endorsement of the Settlement "is entitled to significant weight" in deciding whether to

approve the Settlement. *See*, *e.g*., *Fisher Bros. v. Cambridge Lee Industries, Inc*., 630 F.Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.1980); *Boyd v. Bechtel Corp*., 485 F.Supp. 616-617. Courts should not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *See, e.g., National Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

### E. Settlement Resulted from Adversarial Arms-Length Negotiations.

The Seventh Circuit recently has emphasized the importance of district judges' vigilance regarding collusion in class action settlements. *See Pearson*, 772 F.3d at 778; *Redman*, 768 F.3d at 637; *Eubank*, 753 F.3d at 721. In class action suits, named plaintiffs typically exercise little control over class counsel, and the class has little or no ability to hold accountable either the named plaintiffs or class counsel. *See Eubank*, 753 F.3d at 719. Class counsel and defendants sometimes exploit these dynamics to generate a settlement that extinguishes the claims against the defendant and enriches class counsel and the class representatives with large awards, but does not provide commensurate or adequate benefit for the class. *See Redman*, 768 F.3d at 629; *Eubank*, 753 F.3d at 720. Patently, however, based on the substantial monetary recover provided to the Plaintiff class members, this is not such a case.

There can be little doubt that this Settlement was negotiated at arms-length and in the absence of collusion, particularly where, as the Court is aware, this case is nearly two years old, and has been adversarial and hotly contested for that entire time. Plaintiffs have repeatedly moved for injunctions, contempt, sanctions, and adverse inferences. Defendants for their part have insisted on the bona fides of their development activities and have made numerous filings

to the Court attesting to the same. Both sides have been aggressive in asserting their respective positions in litigation.

The Parties' settlement efforts have also been contested and adversarial. On at least three occasions prior to entering into the present Settlement Agreement, the Parties exchanged settlement term sheets, and it appeared the case would settle, only to have negotiations break down and litigation resume anew with vigor. Class Counsel has been aggressive and effective in seeking a settlement model that would give the class members security against Defendants' potential non-performance. The present Settlement Agreement vindicates that concern and effort by Class Counsel, in providing for liquidated damages for non-performance, as well as security for payment of the liquidated damages in the form of personal guarantees. At the same time, the Settlement Agreement affords Defendants what they sought from the negotiations – a full refund for any Chinese investors who wish to withdraw from the Carillon Tower limited partnership, and the security of a liquidated sum and Court-approved settlement. At the simplest level, the Settlement Agreement creates a path that will allow the project to be fully capitalized, and allow the initial project lender (the class members) to be re-financed. It makes excellent practical and business sense, and the Parties are committed to the Settlement Agreement.

### F.    Attorney's Fees

"[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 957 (7th Cir.2013). As part of this inquiry, and as noted above, "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation

will be received by the class members." *Redman*, 768 F.3d at 629. "[T]he central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Id.* at 634. Although the probability of success at the outset of the litigation is relevant, *see Florin*, 34 F.3d at 565, the "control of the class over its lawyers usually is attenuated, often to the point of nonexistence." *Eubank*, 753 F.3d at 719.

The Seventh Circuit has held that district courts "must set a fee by approximating the terms that would have been agreed to *ex ante,* had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.,* 743 F.3d 243, 246–47 (7th Cir.2014) (internal quotation marks omitted); *see also In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001) ("*Synthroid I*") ("[C]ourts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.") "Such estimation is inherently conjectural," *In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 744 (7th Cir.2011), and the Seventh Circuit does not prescribe a preferred method of calculation, so "in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Americana Art*, 743 F.3d at 247. "The simple and obvious way for the judge to correct an excessive attorney's fee for a class action lawyer is to increase the share of the settlement received by the class, at the expense of class counsel." *Pearson*, 772 F.3d at 786 (internal quotation marks omitted). See *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 234–35 (N.D. Ill. 2016).

The Settlement Agreement in this matter contemplates payment of Class Counsel's attorneys' fees under a percentage of the fund, rather than a *Lodestar*, method. "[I]n consumer class actions ... the presumption should we suggest be that attorneys' fees awarded to class

counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel," *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) citing to *Pearson*, 772 F.3d at 782.

Empirical studies on attorney fees in class actions confirm that the percentage of the total settlement allocated to fees tends to decrease as the total size of the settlement increases. See *Silverman v. Motorola Sols., Inc.,* 739 F.3d 956, 958 (7th Cir.2013); Theodore Eisenberg & Geoffrey P. Miller, "Attorney Fees and Expenses in Class Action Settlements: 1993-2008," 7 *J. Empirical Legal Stud.* 248, 265 (2010) (finding that between 1993 and 2008, in settlements between $2.8 million and $5.3 million, the median attorney fee (inclusive of administrative costs) was 25% and the mean was 26.4%, while in settlements between $22.8 million and $38.3 million, the median attorney fee was 24.9% and the mean was 22.1%); Brian T. Fitzpatrick, "An Empirical Study of Class Action Settlements and Their Fee Awards," 7 *J. Empirical Legal Stud.* 811, 839 (2010) (finding that for settlements ranging from $30 million to $72.5 million, the median attorney fee was 24.9% and the mean was 22.3%); Theodore Eisenberg & Geoffrey P. Miller, "Attorney Fees in Class Action Settlements: An Empirical Study," 1 *J. Empirical Legal Stud.* 27, 28 (2004) ("A scaling effect exists, with fees constituting a lower percent of the client's recovery as the client's recovery increases."). See *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 236 (N.D. Ill. 2016).

Here, the gross settlement fund amount is $30,201,875.00, of which the contemplated attorneys' fees are $7,025,000.00, or 23.2% of the gross settlement fund. This percentage falls squarely within half a percent of the median percentage of the fund attorneys' fees awards within recent Seventh Circuit jurisprudence, and is routinely granted within this District.[1]

---

[1] See, e.g., *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408-409 (7th Cir. 2000)(District Court did not abuse its discretion in selecting 25% as the appropriate percentage-of-recovery figure); *Gehrich v.*

## VI.     Conclusion.

Based on the foregoing and the attachments hereto, the Parties joint and respectfully request that this Court enter an Order: (1) granting this Motion for Final Approval, (2) approving the Plan of Distribution to the participating Class Members, (3) continuing the stay of these proceedings until the Court enters final judgment and dismissal, with prejudice, or, in the alternative, when the Court reinstates the case pursuant to the liquidated damages and/or Bad Faith clauses of the settlement agreement; and (4) awarding attorneys' fees to Class Counsel Glen J. Dunn & Associates and Douglas Litowitz in the amount of 23.2% of the recovery.

Dated:  February 2, 2021                    Respectfully submitted,

/s/ *Glen J. Dunn, Jr.*
Glen J. Dunn, Jr.
Glen J. Dunn & Associates
121 West Wacker Drive
Suite 1414
Chicago, IL 60601
(312) 880-1010

/s/ *Douglas Litowitz*
Douglas Eliot Litowitz
413 Locust Place
Deerfield, IL 60015
(312) 622-2848

COUNSEL FOR PLAINTIFFS

/s/ *Daniel Hildebrand*
Daniel Hildebrand
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
(312) 456-8100

COUNSEL FOR DEFENDANTS

---

*Chase Bank USA, N.A.*, 316 F.R.D. 215, 239 (N.D. Ill. 2016); *In Re: Dairy Farmers of America, Inc.*, 80 F.Supp.3d 838, 845-846 (N.D. Ill. 2015); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 WL 890566, *12 (N.D. Ill.); *Wright v. Nationstar Mortgage, LLC*, 2016 WL 4505169, *18 (N.D. Ill.).

## CERTIFICATE OF SERVICE

I, Glen J. Dunn, Jr., certify that on February 2, 2021, a true and correct copy of the foregoing was served electronically through the Northern District of Illinois CM/ECF electronic filing on all counsel of record. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Glen J. Dunn, Jr.*
Glen J. Dunn, Jr.