UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINA DOU, on behalf of herself and all others similarly situated, </br></br>Plaintiffs, </br></br>v. </br></br>CARILLON TOWER/CHICAGO LP, FOREFRONT EB-5 FUND (ICT) LLC, SYMMETRY PROPERTY DEVELOPMENT II LLC, and JEFFREY L. LAYTIN, </br></br>Defendants. | No. 18 CV 7865 </br></br>Magistrate Judge Young B. Kim </br></br></br></br></br></br>October 18, 2023 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs filed this class action to recover $50 million from Defendants, complaining that they spent the class members' investment money without delivering on their promises. Despite finalizing the class settlement more than two years ago, this action continues because Defendants have failed to fulfill their settlement obligations to the class. Before the court is Plaintiffs' motion for the assignment of Defendants' chose in action against TD Bank NA ("TD Bank") for its alleged violation of an escrow agreement. (R. 568, Pls.' Mot. at 2.) For the following reasons, Plaintiffs' motion is denied:

**Background**

The parties reported to the court on October 29, 2020 that they settled this case, (R. 295), and on February 4, 2021, the court granted final approval of the class settlement for the benefit of 83 class members, (R. 304 at 2). The class settlement

obligated Defendants to pay each class member $550,000 by March 21, 2021. (Id. at 1-2; R. 305 at 1.) This agreed settlement amount represents each class member's investment in the "Carillon Tower"—which supposedly would have funded the construction of a mixed-use, 42-story building in downtown Chicago. (See R. 69, Amend. Compl. at 1; see also R. 576, Defs.' Resp. Ex. A at 22 (Limited Partnership Agreement).)

But Defendants did not pay each class member the required settlement sum and repeatedly represented to the court that they did not yet have the funds to satisfy their settlement obligations but expected to receive the funds soon from an overseas lender. (R. 516, Mem. Rep. and Recommendation at 2.) To this day, Defendants have not met their obligations and have given this court every reason to believe they never intended to meet their settlement obligations.

The Carillon Tower investment was "marketed to Chinese investors as an 'EB-5' path to a green card." (R. 69, Amend. Compl. at 1; R. 576, Defs.' Resp. Ex. A at 33-34.) Pursuant to the Limited Partnership Agreement ("LPA"), investors' capital contribution and administrative fee (totaling $550,000 per investor) were to be held in an escrow account with TD Bank until the following conditions—constituting the "Holdback Trigger"—were met: (1) USCIS "approved the Form I-526 Petition of one Subscriber for Unit in the Offering;" and (2) "[t]he Partnership has provided evidence that the Project plan has been formally submitted to the Chicago Commissioner of Planning and Development." (R. 576, Defs.' Resp. Ex. A at 70.) But Plaintiffs allege that TD Bank released the

investment funds from the escrow account prematurely to an entity—Forefront EB-5 Fund, LLC ("Forefront")[1]—owned by Judgment Debtors Jason Ding and Jeffrey Laytin. (Id.; R. 568, Pls.' Mot. at 1.)

In August 2019—before the class settlement and approval—Plaintiff Ying Yao, who had secured a judgment for herself, filed a motion to issue citations to discover the assets of Ding, Laytin, and Defendants Symmetry Property Development II LLC and Carillon Tower/Chicago LP ("Carillon"), (R. 145, Pls.' Mot. at 1), which the court granted as to Carillon, (R. 155 at 3). Yao issued the corresponding citation notice on September 25, 2019. (R. 165.) On October 29, 2020, however, the court granted an "[o]ral motion to stay all matters of litigation until further order of Court" because the parties reported that they had resolved the matter. (R. 295.) The court lifted this stay of citation proceedings in response to Plaintiffs' motion to do so on May 17, 2022, and the court expanded the citation proceeding to include Layton and Ding. (R. 417.) The citation proceedings are ongoing.

On August 28, 2023, Plaintiffs filed the instant motion seeking to compel an assignment of Carillon's right of action against TD Bank to Plaintiffs pursuant to 735 ILCS 5/2-1402(c)(5)-(6). (R. 568, Pls.' Mot. at 1.) Plaintiffs argue that Judgment Debtor Carillon has a claim against TD Bank under the escrow agreement because, as explained above, TD Bank breached that agreement by releasing Plaintiffs' investment funds prematurely to an entity not involved with the Carillon Tower project before the "Holdback Trigger" was satisfied. (Id. at 2.)

---

[1] Forefront is not the same entity as Defendant "Forefront EB-5 Fund (ICT), LLC" because, Plaintiffs say, Forefront does not have the "(ICT)" reference in its name.

3

Plaintiffs contend that this premature release of funds to a non-Carillon entity harmed not only Carillon, but also Plaintiffs, because it prevented "Carillon from making a loan to the [Carillon Towers] developer, and le[d] to [Plaintiffs'] money being dissipated by Laytin and Ding." (Id.) Plaintiffs assert that an assignment of Carillon's chose in action would allow them to sue TD Bank directly to recover their investments. (Id.)

Defendants oppose Plaintiffs' motion, however, arguing that there is no cause of action TD Bank can assign to Plaintiffs because TD Bank did not breach the escrow agreement. (R. 576, Defs.' Resp. at 1.) Defendants further claim that the "demand ignores that [D]efendants *denied* liability in connection with the Consent Judgment, and entered into the Consent Judgment solely for purposes of converting the class action settlement agreement into an enforceable judgment." (Id.) Further, Defendants argue that TD Bank's release of the investment funds to Forefront was not wrongful, as Forefront was acting as Carillon's agent. (Id. at 3.)

## Analysis

Federal Rule of Civil Procedure 69(a)(1) provides that:

> [a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Where no federal statute applies, a federal court must "adopt the procedural law from the forum state," thus "conform[ing] supplementary proceedings to state law."

4

*F.M. Indus., Inc. v. Citicorp Credit Serv., Inc.*, 656 F. Supp. 2d 795, 797 (N.D. Ill. 2009) (citing Fed. R. Civ. P. 69).

Illinois law allows for the enforcement of civil judgments through supplementary proceedings. 735 ILCS 5/2-1402; Ill. S. Ct. Rule 277. The relevant inquiry in such proceedings is whether "the judgment debtor possesses assets to be applied in order to satisfy the judgment" or "a third party holds any of the judgment debtor's assets to be applied to satisfy the judgment." *F.M. Indus.*, 656 F. Supp. 2d at 797-98 (citing *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009); *Pyshos v. Heart-Land Dev. Co.*, 630 N.E.2d 1054, 1057 (Ill. App. Ct. 1994)). Throughout supplementary proceedings—initiated by the service of a citation to discover assets—judgment creditors attempt to discover assets to satisfy the judgment award. *Id.* at 798. The Illinois statute governing citations to discover assets provides that a court may order a judgment debtor to assign a chose in action to a judgment creditor "to enforce payment of a judgment or in aid of the enforcement of a judgment. 735 ILCS 5/2-1402(c)(1),(5); *see also Phelan by Phelan v. State Farm Mut. Auto. Ins. Co.*, 448 N.E.2d 579, 583 (Ill. App. Ct. 1983).

Plaintiffs' motion fails to explain why they are entitled to the relief they seek here. Although Plaintiffs state that they seek an assignment of chose in action "because the Plaintiff Class want[s] to file an amended complaint that sues TD Bank directly in the name of Carillon," (R. 568, Pl.'s Br. at 2), Plaintiffs do not adequately define the claim they seek to be assigned or show that it can indeed be brought against TD Bank. Their potential claim is further complicated by the fact

5

that Carillon and Forefront are owned and operated by the same individuals—Laytin and Ding—yet Plaintiffs neither acknowledge this fact nor explain their theory as to why it does not impact the viability of the claim they seek to file against TD Bank on behalf of Carillon. Further, Plaintiffs' motion is devoid of legal analysis to support their request.[2] "Underinclusive and skeletal presentations impermissibly shift the responsibility to the court to do the lawyer's work and to explicate the arguments that the briefs have left undeveloped," and "the Seventh Circuit has stressed time and again that it is not a judge's responsibility to research and construct the parties' arguments." *Kyles v. J.K. Guardian Servs.*, 236 F.R.D. 400, 402 (N.D. Ill. 2006) (internal citations omitted).

Perhaps the greatest misstep of Plaintiffs' request is that they misunderstand the nature of the claim they seek to file in the name of Carillon. Rather than seeking the assignment of an existing claim, Plaintiffs seek an assignment of a *potential* chose in action, as Defendants have not filed and do not plan to file the superficially described "claim" against TD Bank. Although it is settled law that actions in existence may be assigned to judgment creditors pursuant to Illinois statutes, *FM Indus.*, 656 F. Supp. 2d at 799-800, neither the Seventh Circuit nor the Northern District of Illinois has held that potential choses in action are assignable. And based on the court's preliminary review, Illinois law appears to be split on this issue.

---

[2] During a scheduled status hearing on October 12, 2023, Plaintiffs declined the court's invitation to supplement their motion despite the court's concerns about the lack of legal analysis supporting Plaintiffs' motion.

An early Illinois case, *Roundtree v. Barringer*, 416 N.E.2d 675, 677 (Ill. App. Ct. 1981), held that potential choses in action could not be assigned because of policy interests that the court valued over the ability to assign the action at issue. In that case, the plaintiff obtained a $75,000 judgment against the Estate of John Harbarger for injuries sustained when Harbarger, who later died, struck the truck that the plaintiff was driving. *Id.* at 675. Harbarger's insurance policy paid the liability coverage limit of $50,000, but the plaintiff sought to recover the judgment balance through a supplemental proceeding against the Estate's Administrator. *Id.* After a citation to discover assets was issued, the "plaintiff unsuccessfully moved to compel the cited parties to assign him any cause of action defendant might have against the insurer for the remainder of the judgment in excess of the policy limits," which plaintiff alleged "arose out of the insurer's negligence, fraud or bad faith in refusing to settle the claim within the policy limits." *Id.* The court held that involuntary assignments of an insured's potential chose in action against an insurer for bad faith or negligence should not be ordered by a court because "[w]ere it otherwise, a judgment creditor who has recovered a judgment in excess of policy limits would invariably proceed against his judgment debtor's insurance carrier in the hope that discovery during the suit would reveal grounds with which to sustain an action." *Id.* at 677.

In later cases, however, Illinois courts decided that judgments could be enforced through involuntary assignments "in all cases, including bad-faith-settlement claims." *O'Neil v. Gallant Ins. Co.*, 769 N.E.2d 100, 116 (Ill. App. Ct.

7

2002) (upholding the potential chose in action for insurer's failure to settle claims within the policy limits in bad faith). To be sure, in *Phelan*, 448 N.E.2d at 583, the Illinois Appellate Court found that Illinois statutory law "does not contain any limitations on the nature of choses in action for which assignment may be compelled" and directly ruled against *Roundtree*. *But see id.* (distinguishing claim in *Phelan* from claim in *Roundtree* as it did not involve garnishment actions). The *Phelan* court rejected the concerns the *Roundtree* court expressed, including that plaintiffs and insureds "may engage in collusive conduct or champerty against an insurer," and "[s]uch collusive conduct could be raised as a defense to an assigned bad faith claim against an insurance company." *Id.* at 582. But the *Phelan* court did "not consider the mere possibility of collusive conduct to be a valid basis on which to deny a right of action," and so it declined to deny the request for an assignment. *Id.*

Even still, at least one Illinois court denied the assignment of potential causes in action after the *Phelan* decision. Indeed, in *Gonzalez v. Profile Sanding Equipment, Inc.*, 776 N.E.2d 667, 670 (Ill. App. Ct. 2002), the plaintiffs, who were seeking to enforce a default judgment, sought "the turnover of the asset of a possible legal malpractice action by defendant against its counsel for counsel's conduct in the underlying case" under 735 ILCS 5/2-1402. But in addition to finding that the confidentiality required by the attorney-client privilege would breach public policy if a legal malpractice claim were turned over to an opposing party, the court held that the statute did not authorize the request because a chose cannot be "potential or

8

inchoate; rather, it [must have] been the subject of litigation or, at the very least . . . in the process of being litigated." *Id.* at 680. The court reasoned that had the legislature intended to include a "potential chose" as an asset ripe for assignment, it would have written it as such, and the court declined to "read that condition into the statute." *Id.*

As explained during the last status hearing, it is not clear to this court whether a potential chose in action may be assigned from a debtor to a creditor under Illinois law, especially where the potential lawsuit Plaintiffs say that Carillon can file against TD Bank may facially be frivolous. As the movants, Plaintiffs had the obligation to demonstrate to this court that Carillon has a legitimate cause of action against TD Bank, which can and should be assigned to Plaintiffs. Plaintiffs have failed to meet this obligation here. Requiring the court to research and construct parties' arguments "is at odds with the fundamental premise of our adversarial system," *Kyles*, 236 F.R.D. at 402 (citing *U.S. v. Lanzotti*, 199 F.3d 954, 960 (7th Cir. 1999) (additional citations omitted)), and this court accordingly declines to do so.

## Conclusion

For the foregoing reasons, Plaintiffs' motion is denied.

                **ENTER:**

                *[signature]*
                **Young B. Kim**
                **United States Magistrate Judge**