**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Lina Dou, on behalf of herself and all others similarly situated,** <br> **Plaintiffs,** | ) | **No.: 18-cv-07865** |
| | ) | **No.: 22-cv-07081** |
| v. | ) | |
| | ) | **Judge Hon. Hunt** |
| **Carillon Tower/Chicago LP;** <br> **Forefront EB-5 Fund (ICT) LLC;** <br> **Symmetry Property Development II LLC;** <br> **and Jeffrey L. Laytin,** <br> **Defendants.** | ) | **Magistrate Hon. Kim** |

**Motion for Turnover Order to Prevent Funds from Coming**
**Under Control of Ding and Laytin and/or their Attorneys**

Plaintiffs' attorney Douglas Litowitz moves this Honorable Court to prevent Ding and Laytin – or their lawyers - from taking control of funds scheduled to be paid to a shell entity in which they are the nominal managers. For this Motion, attorney Litowitz states as follows:

Magistrate Kim issued an order on November 6, 2023, requiring that Ding and Laytin notify the Court within three days of obtaining access to any account and obtain Court approval for expenditures from any such account (ECF #605). We are now six months beyond that Order and no report of access to funds has been submitted, as if Ding and Laytin are living on air.

In the instant case numbered 18-cv-07865, Ding and Laytin raised $48,400,000 for an investment vehicle they managed called Carillon Tower/Chicago LP. It was supposed to loan money to a development entity that they owned. The development entity went bankrupt. *In re Symmetry Tower/Chicago Project Owner LLC*, 23-bk-7151 (N.D. Ill.)(Cleary, J.). The investors in Carillon Tower/Chicago LP, through attorney Litowitz, filed a claim in that proceeding to

recover some of the $48,400,000 from the development entity's bankruptcy estate. However the Chicago property was liquidated and the investors in Carillon Tower/Chicago LP got nothing.

In a related case that is also before this Court numbered 22-cv-07081, Ding and Laytin raised $26,400,000 for an investment vehicle called Coconut Beach/Hawaii LLC, which they formed to loan this money to a Hawaii development entity they owned. As in Chicago, the development entity went bankrupt. *In re SPDII Makaiwa Resort Development LLC,* 23-bk-7153 (N.D. Ill)(Cleary, J.). Once again, attorney Litowitz filed a claim on behalf of the investment fund to recover the money supposedly lent to the development entity. Litowitz appeared on the record, attended court hearings, took Ding's deposition, and hired outside bankruptcy counsel – all at his own expense. This time, the result was different.

The Court approved a Plan of Liquidation whereby Coconut Beach/Hawaii LLC would receive a pro-rata share of the carve-out to unsecured creditors. This translates into a number that is likely between $120,000 and $150,000 of recovery *in total, not per investor*. It amounts to roughly $2,000 for each of the 48 investors in Coconut Beach/Hawaii LLC who each lost $550,000, and it gives $0 to each of the 88 investors in Carillon Tower/Chicago LP who each lost $550,000.

The Plan was approved by the Bankruptcy Court and is slated for confirmation on June 26, 2024 (ECF#165). Other than Litowitz and his outside bankruptcy counsel Elizabeth Janczak of Smith, Gambrell, & Russell, no lawyer appeared for Coconut Beach/Hawaii LLC. The recovery was made possible by attorney Litowitz, and as discussed above, it is a modest recovery compared to the total amount lost.

It seems axiomatic that the money should go into Litowitz's IOLTA for distribution to the investors of Coconut Beach/Hawaii LLC and reimbursement of costs for attorney Litowitz.

However, each of Ding and Laytin's lawyers assert that they should recover this money and put it into their IOLTA accounts. We are requesting the Court's assistance in this dispute.

Attorney Hildebrand claims the recovery should come to his IOLTA so he can deduct attorney fees for representing Coconut Beach/Hawaii LLC in case 22-cv-7081, yet he has never filed a responsive pleading in that case, and never filed an appearance for Coconut Beach/Hawaii LLC in the bankruptcy proceeding. He represents Ding and Laytin, the nominal managers of Coconut Beach/Hawaii LLC, but the entity has been inactive and lacking in any assets or activity since Ding and Laytin lost all of its money. If Hildebrand gets paid, that is tantamount to the money coming to Laytin and Ding and then going to Hildebrand, putting all three of them in a superior position to the bankruptcy creditors who own Coconut Beach/Hawaii LLC and the judgment creditors who own Carillon Tower/Chicago LP.

Attorney Laxmi Sarathy—who represents the bankruptcy debtor owned by Ding and Laytin (e.g., SPDII Makaiwa Resort Development LLC) —claims that the money should come to her IOLTA so she can deduct her fees, even though she never appeared for Coconut Beach/Hawaii LLC, and her client in the bankruptcy case was the debtor who was *adverse* to Coconut Beach/Hawaii LLC as a creditor. This would put her in front of the bankruptcy creditors who own Coconut Beach/Hawaii LLC and the judgment creditors who own Carillon Tower/Chicago LP.

Hildebrand and Sarathy concede that Judge Kim should decide whose IOLTA account should hold the money, and they purport to concede the restrictions this Honorable Court imposed on Ding and Laytin. Despite this, they are still fighting about where this modest recovery should be directed. Incidentally, the money cannot go into an existing bank account for Coconut Beach/Hawaii LLC because Ding and Laytin never set one up.

Providing Ding and Laytin with the opportunity to possess and control any of this money does not comport with fairness or equity, given that they owe a judgment to the Chicago investors in excess of $29 million dollars that they refuse to pay, and also where they were found in contempt of this Court for failure to disclose their assets, and are under bench warrants in Nevada for paying themselves instead of judgment creditors in this case. Additional evidence to substantiate the request is that, *inter alia*, both of their projects went bankrupt, both of their houses are in foreclosure, and additionally their 33% partner in their Chicago and Hawaii projects was Bradley Reifler, who is sitting in federal prison for wire fraud, was found to have committed securities fraud by the SEC, and was barred from the securities industry by FINRA. See *U.S. v. Reifler*, 20-cr-00512 (M.D.N.C.)(ECF#117 Nov. 7, 2022); *SEC v. Reifler*, 20-cv-00511 (D. Nev.)(ECF#68 December 1, 2023); *In re Reifler*, No. 2016050924601 (September 30, 2019)(FINRA National Adjudicatory Panel).

Under the doctrine of "prudential ripeness," which applies in private disputes that do not involve constitutional issues, this dispute is currently ripe even though the recovery is coming in the future. "Prudential ripeness" differs from the better-known doctrine of "constitutional ripeness," which requires that there be a harm (e.g., a case or controversy) before a court can hear a challenge to a statute or the conduct of a state actor. *In re Caesars Entertainment Operating Co., Inc.,* 562 B.R. 168, 177 (N.D. Ill. 2016)(explaining prudential ripeness as having two elements: (i) the legal issues are clear, and (ii) a decision by the Court now will avoid hardship in the future). In *Caesers*, the Court decided an issue of contract law affecting the *future* valuation of the bankruptcy estate, reasoning that the issue was likely to arise at the confirmation hearing scheduled for a few months away, so it was not "remote" *Id.* at 177; *E.F. Transit, Inc. v. Cook*,

878 F.3d 606, 610 (7th Cir. 2018)(as to prudential ripeness, "A claim is ripe if it is fit for judicial decision and not resolving it will cause hardship to the plaintiff.")

The investors in Coconut Beach/Hawaii LLC (and Carillon Tower/Chicago LP) legitimately fear that if the recovery ends up in the hands of Ding and Laytin, they will pay their lawyers and then dissipate the remainder of the money to themselves, leaving attorney Litowitz and the investors with nothing. If anyone should get this money other than the investors of Coconut Beach/Hawaii LLC, it would be the judgment creditors in Carillon Tower/Chicago LP. There is no reason for this money to come under the control of Ding and Laytin or their lawyers. Movant fears that if the Court does not address this issue now, the funds may be paid to the wrong party, in which case fees and distributions would have to be disgorged and unwound after the fact. The lawyers seek clarity, which would also benefit the bankruptcy proceeding.

WHEREFORE, Movant prays for a Turnover Order that any money received by Coconut Beach/Hawaii LLC as a creditor in SPDII Makaiwa Resort Development LLC's bankruptcy proceeding (case number 23-bk-7153) should be held in attorney Litowitz's IOLTA account.

Dated: May 21, 2024

Respectfully submitted,

/s/ Douglas Litowitz
Attorney
413 Locust Place
Deerfield, IL 60015
(312) 622-2848
litowitz@gmail.com

**Certificate of Service**

I certify that on the 21st day of May 2024, I electronically filed this Motion for Turnover Order with the Clerk of the Court using the CM/ECF system.

*/s/ Douglas Litowitz*